Richard **RHEAUME**, Plaintiff-Appellant,

v.

The **TEXAS DEPARTMENT OF PUBLIC SAFETY, et al.,** Defendants-Appellees.

No. 80–2349.

United States Court of Appeals,
Fifth Circuit.

Feb. 1, 1982.

Rehearing Denied March 1, 1982.

Guy C. Fisher, Austin, Tex., for plaintiff-appellant.

Mary Noel Golder, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before GARZA and RANDALL, Circuit Judges.*

PER CURIAM:

Plaintiff-appellant, Richard Rheaume, appeals from a directed verdict in favor of Texas Department of Public Safety ("DPS") Officer Robert Saffell and DPS Director Wilson Spier. Rheaume had sued Saffell and Spier, alleging that Saffell's incarceration of Rheaume after arrest for three traffic violations violated his constitutional rights under the fourth, sixth and fourteenth amendments. Rheaume also included in his complaint an allegation of false imprisonment based on Texas law. Jurisdiction was premised on 28 U.S.C. §§ 1331, 1343 and the doctrine of pendent

---

* Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. 46(d).

jurisdiction. The district court granted a directed verdict in favor of both Saffell and Spier as to Rheaume's constitutional and pendent Texas state law claims. Rheaume then appealed the directed verdict only as to Saffell. We find that the district court's directed verdict on Rheaume's constitutional claim should be affirmed but that the directed verdict on the state claim of false imprisonment was improper as that issue should have been submitted to the jury. We therefore vacate the judgment of the district court as to the state law claim of false imprisonment and remand the case to the district court for proceedings consistent with this opinion.

## I. *Facts*

On January 26, 1979, a few minutes after midnight, Rheaume was stopped by a DPS trooper north of Austin, Texas, for driving on an interstate highway without his headlights turned on. Saffell arrived on the scene and questioned Rheaume as to why he was not using headlights and whether he had recently consumed intoxicating liquor. Rheaume explained that a mechanical problem prevented his using the headlights and responded affirmatively that he had been drinking. When asked by Saffell, Rheaume was unable to produce a valid Texas operator's license but stated that he was a resident of Austin and produced an IBM employee card indicating that he worked at IBM's Austin facility. Additionally, the automobile he was driving was registered to him in Texas.

Rheaume was then placed under custodial arrest by Saffell for driving while intoxicated, driving without his headlights turned on and failure to have a valid Texas operator's license.[1] He was taken to the Travis County jail where a breathalizer test was administered. Rheaume registered .08

blood/alcohol level on the test, a result below the level of .10 at which a presumption exists that a person is intoxicated. Officer Saffell determined that no charge of driving while intoxicated would be filed but did file charges for the other two violations. Saffell, after determining not to release Rheaume with a citation to appear for a hearing on the other charges at a later date, inquired of the jail personnel whether a magistrate had made his nightly call at the jail in order for Rheaume to appear before him for disposition of the two offenses. When told that the nightly visit had already been made, without attempting to contact the magistrate by phone, Saffell placed Rheaume in jail to await a morning appearance before the magistrate. Rheaume remained in jail from approximately 2:00 a. m. until he had appeared before and was released by a magistrate at approximately 9:00 a. m. the next day. At Rheaume's appearance, the magistrate waived any fine against him for driving without headlights because of the time he had already spent in jail and levied a fine against him for failure to have a valid Texas operator's license. Rheaume was then released from jail.

Rheaume subsequently brought an action against Saffell and Spier under 42 U.S.C. § 1983, claiming that his seven hour incarceration violated his constitutional rights under the fourth, sixth and fourteenth amendments in that he was subjected to impermissible punishment without due process of law. Rheaume alleged that, under Texas law, the violations with which he was charged, driving without headlights and failure to possess a Texas operator's license, were misdemeanors which, under the Texas traffic regulations, could be punished only by fine, not incarceration.[2]

---

1. Under the Texas traffic regulations, driving while intoxicated, driving without headlights and failure to possess a valid Texas operator's license are offenses for which custodial arrest is proper if the arrestee is brought immediately before a magistrate for an appearance. See note 2 and note 3, *infra*.

2. The Texas traffic regulations provide:

Every person shall have an operator's ... license in his immediate possession at all times when operating a motor vehicle and shall display the same upon demand of ... any peace officer. Any person who violates this Section shall be guilty of a misdemeanor and upon conviction thereof be punished by a fine of not more than Two Hundred Dollars ($200.00)....

Thus, because he was incarcerated prior to his appearance before a magistrate—when incarceration after his appearance was not an option available under the regulations—Rheaume alleges he was unconstitutionally punished by this pretrial incarceration. Rheaume further asserts that, under Texas law [3] which requires that a person be taken immediately before a magistrate, his seven hour incarceration was unreasonable within the statute and he was thus subjected to false imprisonment. Defendant Saffell and Spier answered, denying Rheaume's constitutional and state law claims. Saffell additionally pleaded a "qualified immunity" defense as to the constitutional claim.

The case proceeded to trial. At trial, the magistrate who had been on call on January 26, 1979, testified that he sometimes was called after his nightly rounds and that he had handled offenses such as Rheaume's by telephone in the past. At the close of Rheaume's case-in-chief, Saffell and Spier moved for and the district court granted a directed verdict on both the state and federal claims, finding that Rheaume did not have a federal constitutional claim on the question whether he was taken "immediately" before a magistrate, that he had not been punished by his confinement, and that, under the district court's interpretation of Texas law, he had been immediately taken before a magistrate. The court also found that, even if Saffell had been liable, there had been no showing that Spier had any policy of encouraging custodial arrest or detention for traffic violations and thus Spier, as Saffell's superior, could not be

---

Tex.Rev.Civ.Stat.Ann. art. 6687b, § 13 (Vernon 1977).

> Every owner, driver or operator of a vehicle while it is upon the main traveled portion of the highway during the period from one-half hour after sunset to one-half hour before sunrise, and at any other time when there is not sufficient light to render clearly discernible any person upon the highway from a distance of at least two hundred (200) feet ahead, shall keep lighted all lamps or lighting devices with which such vehicle is required to be equipped, whether the vehicle is in motion or not.
> . . . .
> (a) It shall be unlawful and constitute a misdemeanor for any person to violate any of the provisions of this Act.
> (b) Any person, corporation or receiver, who violates any provision of this Act shall, upon conviction, be punished by a fine of not more than Two Hundred Dollars ($200.00).

Tex.Rev.Civ.Stat.Ann. art. 6701d–11, §§ 9, 15 (Vernon 1977).

**3.** The pertinent Texas statute states:

> Sec. 147. Whenever any person is arrested for any violation of this Act punishable as a misdemeanor, the arrested person shall be immediately taken before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of such offense and is nearest or most accessible with reference to the place where said arrest is made, in any of the following cases:
> 1. When a person arrested demands an immediate appearance before a magistrate;
> 2. When the person is arrested upon a charge of negligent homicide;
> 3. When the person is arrested upon a charge of driving while under the influence of intoxicating liquor or narcotic drugs;
> 4. When the person is arrested upon a charge of failure to stop in the event of an accident, causing death, personal injuries, or damage to property;
> 5. In any other event when the person arrested refuses to give his written promise to appear in court as hereinafter provided.
> Sec. 148. (a) Whenever a person is arrested for any violation of this Act punishable as a misdemeanor, and such person is not immediately taken before a magistrate, as hereinbefore required, the arresting officer shall prepare in duplicate written notice to appear in court containing the name and address of such person, the license number of his vehicle, if any, the offense charged, and the time and place when and where such person shall appear in court. Provided, however, that the offense of speeding shall be the only offense making mandatory the issuance of a written notice to appear in court, and only then if the arrested person gives his written promise to appear in court, by signing in duplicate the written notice prepared by the arresting officer; and provided further, that it shall not be mandatory for an officer to give a written notice to appear in court to any person arrested for the offense of speeding when such person is operating a vehicle licensed in a state or country other than the State of Texas or who is a resident of a state or country other than the State of Texas.

Tex.Rev.Civ.Stat.Ann. art. 6701d, §§ 147, 148 (Vernon 1977).

liable.[4] The court, having determined that Rheaume had failed to establish his constitutional and state claims, did not address Saffell's qualified immunity claim.

On appeal, Rheaume questions the propriety of the court's directed verdict as to Saffell on the federal and state claims. He does not, however, address whether Saffell was entitled to a qualified immunity defense should we find any valid constitutional claim.

## II. Rheaume's Constitutional Allegations

■ We begin our review of the directed verdict granted to Saffell mindful of the standard enunciated by this court in *Boeing v. Shipman*, 411 F.2d 365 (5th Cir. 1969). We must consider all of the evidence presented—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the directed verdict. If the facts and inferences point so strongly and overwhelmingly in favor of one party that we believe that reasonable men could not arrive at a contrary verdict, we are to determine that the granting of the motion for directed verdict was proper. On the other hand, if there is substantial evidence opposed to the motion for directed verdict, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion for directed verdict should have been denied, and the case submitted to the jury. 411 F.2d at 375.

Rheaume's assertion of the violation of his constitutional rights is premised on the concept that he was impermissibly punished by his seven hour incarceration in the Travis county jail. Rheaume relies on the decision of the United States Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), to support his position. In *Bell*, the Court examined the conditions of confinement for pretrial detainees in New York City, holding that, where pretrial restriction was reasonably related to a legitimate non-punitive governmental objective, such detention did not, without more, amount to punishment. Rheaume argues, however, that because Officer Saffell was aware that he was a resident of Austin, that he was employed in Austin and that he had Texas license plates on his car, his incarceration was not in furtherance of a legitimate state interest of assuring his attendance at a hearing on the charges and thus amounted to punishment under the *Bell* standard.

This argument, as presented, raises a slightly different question than that addressed by this court when construing the Texas custodial arrest and appearance statutes as to their constitutionality. Previously we have been faced with the question whether the right to a "immediate" hearing before a magistrate according to the requirements of Texas state law was of constitutional dimension under the due process clause, holding consistently that it was not. *Perry v. Jones*, 506 F.2d 778, 780–81 (5th Cir. 1979). *See Anderson v. Nosser*, 438 F.2d 183 (5th Cir. 1971). Rheaume's argument, that pretrial incarceration where there can be no post conviction incarceration creates an anomaly which is unconstitutional punishment, seems to differ from that presented in prior cases, *see Perry v. Jones, supra*, where only "immediacy" or lack of it was the issue presented to the court.[5]

---

**4.** The district court held that Spier's liability could not, under the Civil Rights Act, be predicated on vicarious liability. Because Rheaume does not appeal the directed verdict as to Spier we express no opinion as to the propriety of this ruling.

**5.** Decisions by the Supreme Court have additionally not addressed this question. Justice Stevens has recently stated: "[T]he Court has not directly considered the question whether 'there are constitutional limits upon the use of "custodial arrests" as the means for invoking the criminal process when relatively minor offenses are involved.'" *Robbins v. California*, —— U.S. ——, ——, n.11, 101 S.Ct. 2841, 2858, n.11, 69 L.Ed.2d 744, 1981. While Justice Stevens stated that a person arrested for a misdemeanor may be placed temporarily in custody, *id.*, his statements indicate that the constitutional ramifications of the *length* of custody and incarceration, particularly in the context of impermissible punishment, have not been clearly delineated.

In reviewing whether the district court's disposition of Rheaume's constitutional claim should be affirmed, we first note the district court's determination of the issues before us. The district court determined that whether Rheaume was taken immediately before a magistrate was not, according to the decisions of this court, of constitutional dimension, further finding that Rheaume's incarceration was "custodial detention pending first appearance before a magistrate" rather than punishment. The court did not, however, address the question whether there was a legitimate state objective to be gained by the incarceration so as to avoid any indices of punishment as articulated in *Bell.* Additionally, because the district court found that Rheaume had no constitutional claim, it did not reach the question whether, given any constitutional claim by Rheaume, Saffell was entitled to qualified immunity from liability because he held a reasonable belief that his actions were lawful and within the scope of his authority.

■■ We have recently had occasion to discuss the concept of the qualified immunity available to police officers when charged with constitutional violations. *Barker v. Norman,* 651 F.2d 1107, 1120–1122 (5th Cir. 1981); *Fowler v. Cross,* 635 F.2d 476 (5th Cir. 1981). An officer who reasonably believes that his actions are lawful is entitled to immunity from liability if he pleads such immunity unless it can be shown by the plaintiff that the officer lacked good faith. *Barker v. Norman,* 651 F.2d at 1120. We need not repeat our complete analysis here; we need only reiterate that once the officer has shown that he was acting in his official capacity and within the scope of authority, "the burden shifts to the plaintiff to breach the official's immunity by showing that the official lacked good faith." 651 F.2d at 1121 (citations omitted). There "are both objective and subjective components to this good faith," *id.,* a showing of a breach of either leading to a finding of no immunity.

A review of the trial transcript and briefs of the parties indicates that Rheaume has never alleged lack of good faith to contro-

vert Saffell's affirmative defense of qualified immunity. Even if he had, such a challenge would be futile. The evidence demonstrates that Saffell had legal authority to initially make the custodial arrest and to conduct the breathalizer test. Moreover, there is no evidence that, in incarcerating Rheaume, Saffell, either subjectively or objectively, lacked good faith.

■■ The subjective lack of good faith, that is, that the police officer acted with malicious *intent,* may be shown by proof

> that an official either actually intended to do harm to the plaintiff, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result.

651 F.2d at 1121. There is no evidence in the transcript of the trial, in the brief on appeal or in argument presented orally to this court, of malicious intent on the part of Saffell to harm Rheaume, *i.e.,* to inflict punishment on him.

Additionally, objective proof of the lack of good faith, that Saffell knew or should have known that the action he took violated Rheaume's constitutional rights, is wholly absent.

> [A]n official is liable under section 1983 "if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights" of the person affected. The fulcrum ... is the existence, at the time of the official's action, of clearly established judicial decisions that make his action unconstitutional.

651 F.2d at 1121. An examination of the law applicable to this case does not reveal any established judicial decisions on which lack of good faith by Saffell could be predicated. Considering that the question of immediate presentation to a magistrate had been determined by this court not to be a constitutional claim, *Perry v. Jones, supra,* and that the question of detention as punishment had not been addressed by this or any other court, Saffell cannot, from the record presented, be objectively charged

with knowledge that his action violated Rheaume's constitutional rights.

From a review of the case law relevant to Rheaume's constitutional claim and our analysis of the evidence presented at trial, it is clear that, under this court's precedent, Saffell would have been entitled to a good faith defense to this arguable constitutional claim presented by Rheaume. We thus need not decide what is, at best, a questionable constitutional claim, as Saffell's qualified immunity defense would have been an appropriate basis for the district court's decision and is the basis upon which we affirm the directed verdict as to Rheaume's constitutional claim.

### III. The Texas State Law Claim of False Imprisonment

Rheaume's constitutional argument, which we do not decide because of Saffell's qualified immunity, does present a "substantial constitutional question upon which the district court could exercise its pendent jurisdiction as to the state law claims of false imprisonment." *Jackson v. Stinchcomb*, 635 F.2d 462, 471 (5th Cir. 1981). The district court, by addressing the merits and granting a directed verdict on the state law claim, clearly and properly exercised its pendent jurisdiction on this false imprisonment claim. The twofold question before us then is whether that directed verdict was proper and, if improper, what course of action the district court should take as to the state law claim upon remand.

As to the first question, we find that the decision of the district court to grant the directed verdict on the Texas state law claim was improper. The court, in support of its directed verdict, cited several decisions of Texas courts in which the word "immediate" as it applies to appearance before a magistrate had been construed. In those cases, detention for several hours had been construed not to violate the immediate appearance requirement. The court, however, failed to note a decision by this court construing a situation where the question of "immediate" presentation to the magistrate had been held to be one for the jury. *Roberts v. Bohac*, 574 F.2d 1232 (5th Cir. 1978).

In *Roberts*, strikingly similar to the case before us, the plaintiff was arrested and jailed after a magistrate had made his night rounds. No attempt was made to notify the magistrate even though there was testimony that he might have been available after rounds. A jury verdict on the state law claims in favor of the plaintiff was upheld by this court. The question important to the court in its affirmance of the false imprisonment verdict was the *reasonableness* of the police conduct in not contacting a magistrate. Implicit in the affirmance was that failure to contact a magistrate could be unreasonable. 574 F.2d at 1233. Here, the magistrate testified that he had, on prior occasions, dealt with misdemeanor offenses over the telephone and Officer Saffell testified that he did not even attempt to contact the available magistrate to determine whether or not Rheaume's appearance could be handled telephonically. Thus, the question of reasonableness of Saffell's conduct under the Texas statute which requires that a person be taken immediately before a magistrate is one that, under *Roberts*, should have been submitted to the jury. Under the *Boeing v. Shipman* standard, the court's failure to submit the state law claim of which it had assumed pendent jurisdiction was erroneous.

Having reversed only as to the state law claim, the final question before us is the disposition of the state law claim on remand. As we have noted, the court assumed pendent jurisdiction to hear the state law claim. That assumption of pendent jurisdiction was within the discretion of the trial court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Even at this stage of the proceeding, on remand, the district court has the discretion to retain or to dismiss the state law claim. *See United Mine Workers*, 383 U.S. at 727, 86 S.Ct. at 1139; *In Re Carter*, 618 F.2d 1093, 1102 (5th Cir. 1980). We note that at least one factor should be considered by the district court on remand. Should there be a dismissal by the district court, there may be a question whether Rheaume would have access, in light of the

applicable Texas statute of limitations, to state court.[6] Because it is within the discretion of the district court to determine whether to retain or dismiss the pendent state law claim, we need not decide this question; rather, it is for the district court, in the first instance, to request appropriate briefing and argument from the parties and to exercise its discretion in light of the answer to the question of the availability of a state forum. The government, post argument, alleged that Rheaume could file his claims in state court because the Texas savings statute[7] would allow refiling of Rheaume's false imprisonment claim in state court within sixty days after the federal district court dismissed Rheaume's state claim. We do not intimate that its position is correct; we simply note to the district court that the law of this circuit indicates that where a litigant who has properly been in federal court is later time barred from using the state courts to litigate his pendent claim, the court "should exercise its pendent jurisdiction." *Henson v. Columbus Bank and Trust Company*, 651 F.2d 320, 325 (5th Cir. 1981); *Pharo v. Smith*, 625 F.2d 1226, 1227 (5th Cir. 1980) ("That a plaintiff's state law claim will be time barred if dismissed is certainly a factor, if not a determinative factor, a district court should consider in deciding whether to maintain jurisdiction over pendent state claims...."). *See also O'Brien v. Continental Illinois National Bank and Trust Company*, 593 F.2d 54, 63–65 (7th Cir. 1979). Moreover, according to *Henson*, if the district court determines that the pendent claim should be dismissed by the federal court and Rheaume later discovers that his case is time barred in the state court, the federal district court should grant a motion for reconsideration of whether or not the

federal court will exercise its pendent jurisdiction to hear the state law claim. 651 F.2d at 325.

The directed verdict on Rheaume's constitutional claim is affirmed because of Saffell's qualified immunity. The judgment of directed verdict as to Rheaume's state law claim is vacated and the case is remanded to the district court for proceedings consistent with this opinion.

Saffell shall bear the costs of this appeal.

AFFIRMED IN PART, VACATED IN PART and REMANDED.

---

6. The applicable period of limitations would, of course, be governed by Texas law.

7. The Texas savings statute provides:
   When an action shall be dismissed in any way or a judgment therein shall be set aside or annulled in a direct proceeding, *because of a want of jurisdiction of the Trial Court in which such actions shall have been filed*, and within sixty (60) days after such dismissal or other disposition becomes final, such action

shall be commenced in a Court of Proper Jurisdiction, the period between the date of first filing and that of commencement of the second Court shall not be counted as a part of the period of limitations unless the opposite party shall in abatement show the first filing to have been an intentional disregard of jurisdiction.
Tex.Rev.Civ.Stat.Ann. art. 5539a (Vernon 1958) (emphasis added).