**Jose SALDANA, Plaintiff-Appellant,**

v.

**Antonio GARZA and Ricardo Olvera, Defendants-Appellees.**

No. 81–2111.

United States Court of Appeals, Fifth Circuit.

Sept. 7, 1982.

Rehearing Denied Oct. 6, 1982.

James C. Harrington, San Juan, Tex., Charles S. Sims, for plaintiff-appellant.

Jones & Lewis, B. Buck Pettitt, John E. Lewis, McAllen, Tex., for defendants-appellees.

Before BROWN, GOLDBERG and POLITZ, Circuit Judges.

GOLDBERG, Circuit Judge:

The plaintiff-appellant brought this civil rights damage action against two police officers who allegedly subjected him to arrest and detention without probable cause. Following a trial in federal district court, a jury found that the plaintiff's arrest was based upon probable cause. Accordingly, judgment was entered in favor of the defendant police officers. The plaintiff then brought this appeal, arguing that there had been numerous errors in the trial proceedings.

Our review of the record reveals that the defendant police officers asserted their "good-faith" as a bar to personal liability and that the plaintiff failed to rebut this affirmative defense. We therefore conclude that insofar as these defendants were cloaked by the special protections afforded by a qualified immunity, the judgment dismissing the plaintiff's claims must be affirmed.

## I. FACTS

This appeal arises from events that transpired during the late evening hours of February 15, 1976 in the south Texas city of McAllen. That night, plaintiff-appellant Jose Saldana was standing near his home,[1] drinking beer and listening to a car stereo along with his father and his sister's fiance.

At approximately 11:00 p. m., police officers Antonio Garza and Ricardo Olvera were on routine patrol in the neighborhood, cruising in an area approximately one-and-a-half blocks from the Saldana property. Hearing loud music, shouting, and "gritos,"[2] the two officers followed the sounds in an effort to investigate.[3] At the end of this aural trail, Officers Garza and Olvera found the Saldana trio.

---

1. There is a dispute as to whether Saldana was standing in a "public place" at the time of this incident. Saldana contends that he was positioned in his own driveway, near a public street but on his property; the defendants contend that Saldana had stepped over his property line and into the street. See t. a. n. 9.

2. The parties tell us that a "grito" is best characterized as "an exuberant yelp."

3. Garza and Olvera were not responding to any specific complaints about the noise but were attracted to the scene by the noise itself. Earlier that evening, however, there had been complaints about the noise and another team of McAllen police officers had asked the Saldana household to quiet down.

Officer Garza stepped out of the patrol car, approached the revelers, and attempted to read the McAllen noise ordinance to them. He then told the three to quiet down and lower their stereo. Saldana's response was hostile. Just what Saldana said to Officer Garza remains unclear,[4] but both police officers testified that Saldana was definitely angry and appeared to be drunk as well.[5]

Officer Garza insisted that Saldana calm down, stop yelling and turn down his radio. When Saldana refused, Garza proceeded to place him under arrest. Saldana resisted and a brief struggle ensued, however he was quickly restrained and placed in the patrol car. Saldana was charged with "public intoxication" and "disorderly conduct by abusive language," held at the McAllen police station for about forty minutes, and then released.

There has been no allegation that Officers Garza and Olvera knew Jose Saldana or harbored any personal animus toward him, nor has there been any suggestion that Saldana was in any way abused once he had been restrained and placed in the patrol car.

## II. PROCEEDINGS BELOW

The procedural origins of this suit can be traced to a class action pending in the United States District Court for the Southern District of Texas: *Guadalupe Cano, et al. v. Jesse Colbath, et al.* (S.D.Tex., Brownsville Div., CA 76–B–52). In *Cano v. Colbath*, the plaintiffs alleged that the City of McAllen, its police chief, and certain individual police officers were responsible for a pattern and practice of police misconduct. The plaintiffs sought injunctive relief as well as monetary compensation for those McAllen residents who had allegedly suffered from specific instances of official wrongdoing.

On April 10, 1980, the district court ordered that the damage claims in *Cano v. Colbath* be severed from the class action and directed each of the individual claimants to file separate suits. Jose Saldana, appellant in the case now before us, was one of the individual claimants in *Cano v. Colbath*. Pursuant to the order severing his claim from the class action, Saldana filed this suit under 42 U.S.C. § 1983, seeking $60,000 in compensatory and punitive damages from Officers Garza and Olvera.

As the basis for his damage claims against Garza and Olvera, Saldana alleged that on the night of February 15, 1976, he had been arrested and detained without probable cause and that the defendants had used unreasonable force in making the allegedly illegal arrest.[6] Specifically, Saldana argued that he was neither "publicly intoxicated"[7] nor "disturbing the peace"[8] when

---

4. The verbal exchange between Saldana and Officer Garza was carried on in Spanish. Apparently, Officer Garza attempted a translation of the McAllen noise ordinance. In response, Saldana is reported to have told Garza to "get off my god-damn property," and called the officer a "stingy-dog," among other insults. We are told that the gist of Saldana's tirade was that Officer Garza, a Mexican-American, was working for a police force which Saldana perceived to be an arm of the "Anglo" establishment.

5. Officer Garza testified that Saldana appeared glassy eyed, unsteady on his feet, and smelled of alcohol. Trial Transcript at 175. Saldana admits to having had "four-or-five" beers. Trial Transcript at 118.

6. Per order of the district court, the parties did not file new complaints and answers in the individual damage actions. Instead, each side was directed to submit a proposed pretrial order supplementing the pleadings filed in *Cano*

v. *Colbath*. Thus, our presentation of the plaintiff's allegations and the defendants' response is culled from the pleadings in *Cano v. Colbath*, as supplemented by the proposed pretrial orders prepared by the parties in this case.

7. Under Texas law, "an individual commits an offense if he appears in a public place under the influence of alcohol or any other substance, to the degree that he may endanger himself or another." Tex.Penal Code Ann. tit. 9, § 42.-08(a) (Vernon).

8. Under Texas law "a person commits an offense if he intentionally or knowingly: uses abusive, indecent, profane or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace [§ 42.01(a)1]" or "makes unreasonable noise in a public place or in or near a private residence that he has no right to occupy [§ 42.01(a)5]." Tex.Penal Code Ann. tit. 9, § 42.01 (Vernon). In Texas, a police officer is

he was arrested. Saldana contended that he could not have been guilty of "public intoxication" as defined by Texas law because he was not so intoxicated as to pose an immediate threat to himself or to others and because he was not in a "public place" at the time of his arrest.[9] In a similar vein, Saldana argued that his angry words with Officer Garza could not constitute a violation of the Texas "abusive language" statute because he was not in a public place at the time of his arrest and because his utterances did not "tend to incite an immediate breach of the peace." In essence, the plaintiff litigated this civil damage suit much as if he were defending himself in a criminal action, arguing that he was not breaking the law when he was arrested and that therefore his arrest was not supported by probable cause.

In response, Officers Garza and Olvera denied Saldana's allegations, asserted that they *did* have probable cause to arrest, and that they did *not* use unreasonable force. Moreover, the defendants affirmatively claimed that they had acted "in good faith, and with a reasonable belief in the lawfulness of their acts." [10]

A three day jury trial was held. Following the close of all testimony and arguments, the court directed a verdict in favor of Officer Olvera but allowed the jury to consider the evidence against Officer Garza. The jury was charged, given special interrogatories, and returned a finding that the arrest was supported by probable cause and that Garza had not used unreasonable force. Judgment was entered upon the verdict and the plaintiff then brought this appeal.

## III. ISSUES ON APPEAL

Appellant Saldana has advanced an array of interesting and not wholly insubstantial arguments on appeal; he contends that the trial court erred in its evidentiary rulings, in refusing to direct a verdict in his favor, in directing a verdict in favor of Officer Olvera, in its jury instructions, in its formulation of special interrogatories, and in allowing the jury to consider the police officers' "good-faith" immunity defense.[11] However, we find that it is only necessary to address the last of these many issues: the question of the defendants' entitlement to a "good-faith" qualified immunity defense.

## IV. THE QUALIFIED IMMUNITY DEFENSE

 It is axiomatic that public officials whose positions entail the exercise of discretion enjoy the special protections of a qualified immunity from personal liability in § 1983 damage actions. *Harlow v. Fitzgerald*, —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Procunier*

authorized to make a warrantless arrest for violation of § 42.01, *Brown v. State*, 594 S.W.2d 86, 87 (Tex.Cr.App.1980).

**9.** Armed with voluminous citations to Texas real property law and an array of maps, diagrams and visual aids, Saldana sought to establish that this arrest occurred while he was on private property; arguing that as a matter of law, a driveway intersecting a shoulder of a public road and adjacent to a neighboring home is not a "public place" for the purposes of the Texas Penal Code.

**10.** In their answers and proposed pretrial order, the defendants affirmatively claimed that their reasonable good faith belief in the lawfulness of their conduct served as a bar to liability. *See*, "Defendants' Proposed Pretrial Order" (filed July 3, 1980) at page 2 in *Saldana v. Garza* (S.D.Tex., Brownsville Div., C.A. B–80–77); *see also*, "Original Answer of Defendant,

Ricardo T. Olvera to Plaintiff's Complaint" (filed May 5, 1980) at ¶ XIV and "First Amended Answer of Defendant Antonio Garza to Plaintiff's Complaint" (filed March 17, 1980) at ¶ XIII in *Cano v. Colbath, supra.*

**11.** Apparently, Saldana does not appeal from the jury's finding that Officer Garza used reasonable force in effecting the arrest. Saldana's arguments on appeal are directed exclusively to overturning the jury's findings regarding the legality of the arrest.

We also note that Saldana originally brought both state and federal damage claims. However, the plaintiff never requested a jury instruction or finding on his state law claims, nor does he mention these claims in his appeal. We therefore assume that he has abandoned his state law causes of action.

*v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).[12] This "qualified" or "good-faith" immunity is an affirmative defense. *Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980); *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Thus, it is the defendant who bears the burden of pleading his good faith[13] and establishing that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Williams v. Treen,* 671 F.2d 892, 897 (5th Cir. 1982); *Barker v. Norman,* 651 F.2d 1107, 1120 (5th Cir. 1981).

■ Once a defendant has asserted the affirmative defense of qualified immunity and has established that any allegedly tortious conduct was undertaken pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this "good faith" defense. *Garris v. Rowland,* 678 F.2d 1264, 1271 (5th Cir. 1982).[14] In order to breach the qualified immunity defense, the plaintiff must establish that a defendant's allegedly wrongful conduct violated clearly established law. *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982).[15]

"Government officials performing discretionary functions ... are shielded

**12.** It is by now well established that police officers are entitled to assert this "qualified immunity." *E.g., Garris v. Rowland,* 678 F.2d 1264, 1271 (5th Cir. 1982); *Smith v. Gonzales,* 670 F.2d 522 (5th Cir. 1982); *Logan v. Shealy,* 660 F.2d 1007, 1014 (4th Cir. 1981); *Smiddy v. Varney,* 665 F.2d 261 (9th Cir. 1981); *Hunter v. Clardy,* 558 F.2d 290, n.1 (5th Cir. 1977).

**13.** *Gomez v. Toledo, supra.* We have repeatedly stated that a district court should not dismiss a § 1983 damage claim on grounds of qualified immunity unless this affirmative defense has been asserted by the defendant. *See, e.g., Williams v. Treen,* 671 F.2d 892, 896 n.6 (5th Cir. 1982) (*dicta* ); *Barker v. Norman,* 651 F.2d 1107, 1120 (5th Cir. 1981) (*dicta* ); *Barrett v. Thomas,* 649 F.2d 1193, 1201 (5th Cir. 1981).

**14.** In *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), it was held that § 1983 defendants bear the burden of pleading official immunity as an affirmative defense. However, "*Gomez* did not decide which party bore the burden of proof on the issue of good faith." *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2737 n.24, 73 L.Ed.2d 396 (1982). In this Circuit, the rule is that a defendant official bears the burden of pleading good faith and establishing that any allegedly tortious acts were undertaken pursuant to the exercise of his discretionary authority, *Williams v. Treen, supra* at 896–897. However, once this has been done, "the burden [then] shifts to the plaintiff to breach the officials' immunity by showing that the official lacked good faith." *Garris v. Rowland, supra* at 1271; *Rheaume v. Tex. Dept. of Public Safety,* 666 F.2d 925, 930 (5th Cir. 1982); *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 562 (5th Cir. 1982); *Barker v. Norman, supra* at 1121.

While the Fifth Circuit rule has not enjoyed universal acceptance, *see e.g., Haislah v. Wal-* *ton,* 676 F.2d 208, 214–215 (6th Cir. 1982) (defendants bear burden of showing that they have acted in good faith); *Wolfel v. Sanborn,* 666 F.2d 1005, 1007 (6th Cir. 1982) (burden on defendant); *Harris v. Roseburg, et al.,* 664 F.2d 1121, 1127 (9th Cir. 1981) (burden on defendant); *Logan v. Shealy,* 660 F.2d 1007, 1014 (4th Cir. 1981) (burden on defendant); *DeVasto v. Faherty,* 658 F.2d 859, 865 (1st Cir. 1981) (burden on defendant), this panel is bound by the rule that places the burden of breaching an asserted immunity upon the plaintiff.

**15.** The Supreme Court's recent opinion in *Harlow v. Fitzgerald, supra,* has wrought a quiet revolution in the law of official immunities. Prior to that decision, it had been consistently held that the "good faith" immunity defense had both "objective" and "subjective" aspects—the oft-cited "two prong" standard. *See, e.g., Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 320–22, 95 S.Ct. 992, 999–1001, 43 L.Ed.2d 214 (1975); *Garris v. Rowland, supra* at 1271–1272. *Williams v. Treen, supra* at 896; *Rheaume v. Tex. Dept. of Public Safety, supra* at 930; *United Carolina Bank v. Board of Regents, supra* at 562 (5th Cir. 1982); *Barker v. Norman, supra* at 1125–1127; *Bogard v. Cook,* 586 F.2d 399, 411 (5th Cir. 1978); *Bryan v. Jones,* 530 F.2d 1210, 1214 (5th Cir. 1976) (*en banc* ). Thus, prior to *Harlow,* there were two avenues open to the § 1983 plaintiff who sought to rebut the qualified immunity defense: he could either allege that the defendant official had acted with subjective malice or that the defendant had acted in violation of clearly established law. *Williams v. Treen, supra* at 896. In *Harlow,* however, the Supreme Court "adjusted" the qualified immunity standard established by its earlier decisions and dispensed with the "subjective" test of official good faith. *Harlow v.*

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights."

*Id.* 102 S.Ct. at 2738.

Thus, unless a § 1983 plaintiff can establish that the defendant official has violated clearly settled law, his damage action must be dismissed. *Id.*[16]

It is undisputed that the defendants in this case were acting pursuant to their discretionary authority when they arrested Jose Saldana.[17] Moreover, there is no question but that these defendants asserted their affirmative defense of qualified immunity.[18] Once the defendants asserted and established their entitlement to a qualified immunity, the burden of proof and persuasion on this issue shifted to the plaintiff, *see* note 14. It became Jose Saldana's burden to breach the defendants' good-faith immunity. *Id.* To recover monetary damages, Saldana was required to show that the defendants had violated clearly established law, *see* note 15.

◼ We have carefully reviewed the briefs and record and find that the plaintiff-appellant offered only one argument in support of his crucial claim that the defendants' conduct had violated "clearly established" law. Specifically, Saldana suggested that Officers Garza and Olvera were not entitled to a qualified immunity because "the Texas statutory provisions granting authority to arrest someone for public intoxication and disorderly conduct by abusive language were enacted many years ago and represent well-settled statutory law."

*Appellants' Brief* at 42.[19] In essence, Saldana argued that because he was *not* violating laws that were "clearly-settled," Officers Garza and Olvera must have violated "clearly-settled" law in making the arrest.

We find the appellant's syllogism to be flawed. He would have us hold that whenever a police officer makes an arrest for "public intoxication" or "disturbing the peace," and it is later determined that the accused was not committing these offenses as defined by statute, the arresting officer's conduct would constitute a violation of clearly established law. Certainly this cannot be the rule. As Chief Judge Clark has recently stated:

> The Constitution does not guarantee that only the guilty will be arrested. If it did, section 1983 would provide a cause of action for every defendant acquitted— indeed for every suspect released.

*Smith v. Gonzales,* 670 F.2d 522, 526 (5th Cir. 1982).

◼ The mere fact that a person is wrongfully arrested and charged with an offense whose elements are well-settled does not mean that the arrest itself contravenes "well-settled law." *See, e.g., Garris v. Rowland, supra* (officer acting without probable cause arrests plaintiff and charges him with child molestation; nevertheless, defendant is cloaked by qualified immunity). Rather, it is clear that a police officer may be immune from liability under § 1983 even if it is later determined that probable cause for an arrest did not exist. *Id.*

We could assume *arguendo* that Saldana was standing on the "private" side of the

---

*Fitzgerald, supra* 102 S.Ct. at 2737–2739. In light of *Harlow,* the good faith of official defendants is now to be tested purely by an "objective" standard; "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald, supra* 102 S.Ct. at 2738–39.

16. *Harlow v. Fitzgerald, supra,* involved the qualified immunity of federal officials sued in "*Bivens*"-type damage actions. However, the *Harlow* court expressly stated that the same qualified immunity standard would apply in

suits brought against state officials under § 1983. *Id.* 102 S.Ct. at 2738–39 n.30.

17. It was never suggested that the defendants' actions were "... so far removed from the ordinary course of [their] duties ... that [they] could not] establish their entitlement to claim immunity in the first instance." *Barker v. Norman,* 651 F.2d 1107, 1121 n.18.

18. *See,* note 10.

19. This is the only argument regarding qualified immunity that was made in the trial court. *See* Plaintiff's Motion for J.N.O.V. at ¶ 19.

property line at the time of his arrest and that he therefore did not commit the offense of *public* intoxication. Similarly, we could assume that whatever Saldana said to Officer Garza constituted constitutionally "protected speech" and could not serve as the basis for a conviction under the Texas "abusive language" statute. Simply stated, we could assume that the arrest was illegal and unsupported by probable cause. However, even if all the plaintiff-appellant has said regarding the illegality of his arrest is true, we could still find that the arresting officers enjoy a qualified immunity from personal liability. *Garris v. Rowland, supra* at 1271; *Harris v. Pirch,* 677 F.2d 681, 686–689 (8th Cir. 1982) (although plaintiff established *prima facie* § 1983 case, defendant is cloaked by a qualified immunity); *Rheaume v. Texas Department of Public Safety supra* at 931 (not necessary to determine if plaintiff established *prima facie* case since defendant is protected by qualified immunity); *cf. Reeves v. City of Jackson, Miss.,* 608 F.2d 644 at 652 n.3 (5th Cir. 1979) (*dicta*).

In this case, the plaintiff contended that he was arrested without probable cause because he had not committed the offenses with which he had been charged. He supported this contention with elaborate arguments regarding the constitutionality of local sound ordinances and abusive speech statutes, supplemented by an extended discourse upon Texas "public-place" jurisprudence. Saldana has argued that the defendants should have known that on the facts of this case an arrest was not justified. We just cannot agree.

Police officers can be expected to have a modicum of knowledge regarding the fundamental rights of citizens. Lawlessness will not be allowed to pervade our constabularies. However, in holding our law enforcement personnel to an objective standard of behavior, our judgment must be tempered with reason. If we are to measure official action against an objective standard, it must be a standard which speaks to what a reasonable officer should or should not know about the law he is enforcing and the methodology of effecting its enforcement. Certainly we cannot expect our police officers to carry surveying equipment and a Decennial Digest on patrol; they cannot be held to a title-searcher's knowledge of metes and bounds or a legal scholar's expertise in constitutional law.

In order to impose personal liability upon these individual police officers, the plaintiff was not only required to show that this arrest was illegal; it was necessary that he show that the arrest was so illegal as to violate clearly established law. In this case and on these facts, we do not think that the plaintiff carried his burden.[20]

## V. CONCLUSION

█ It goes without saying that a plaintiff who seeks to collect damages for an allegedly illegal arrest must prove that the arrest was indeed illegal. However, establishing the illegality of the arrest will not necessarily entitle the plaintiff to a recovery. If the arresting officers have asserted and established their entitlement to a "good-faith" immunity, the plaintiff bears an additional burden; he must *rebut* the asserted defense. If he does not rebut the defense, he cannot recover—even if he has

---

**20.** In reaching our decision, we have applied the qualified immunity standard set forth in the recently published *Harlow v. Fitzgerald, supra.* See note 16. However, we note that in the case now before us, the plaintiff introduced no evidence that could support a finding that these police officers acted with personal malice. Thus, even under the pre-*Harlow* "two-pronged" qualified immunity standard (defendant must act in both objective *and subjective* good faith in order to enjoy protections of immunity), these defendants would be entitled to a dismissal as a matter of law.

We also emphasize that while the *Harlow* standard may have the effect of broadening the scope of the qualified immunity defense, it certainly does *not* give police officers absolute immunity from civil damages liability. Certainly, egregious police misconduct will continue to give rise to personal liability. *See, e.g., Howard v. Gonzales,* 658 F.2d 352 (5th Cir. 1982). All we hold today is that these defendants properly asserted their qualified immunity and this plaintiff failed to rebut the defense by showing that the defendants had acted in violation of what they knew or should have known to be clearly established law.

been the victim of a demonstrably illegal arrest.

We recognize "that courts should be even-handed in their dispensation of justice regardless of rank, badges, or insignia of offense." *Williams v. Treen, supra* at 903. Therefore, it is important to emphasize that the qualified immunity defense "is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government." *Barr v. Matteo*, 360 U.S. 564, 572–73, 79 S.Ct. 1335, 1340–41, 3 L.Ed.2d 1434 (1959). "The underlying policy which pervades every qualified immunity analysis is one of protecting the public by permitting its decision-makers to function without fear that an exercise of discretion might in retrospect be found to be error." *Cruz v. Beto*, 603 F.2d 1178, 1183 (5th Cir. 1979).

In concluding that qualified immunity is applicable to this case, we must remind ourselves that such immunity should neither be gratuitously nor parsimoniously applied. Perhaps Mr. Saldana's arrest was based upon probable cause; perhaps it was not. However, in this case "we need not decide . . . [Saldana's] constitutional claims, because [the defendants'] qualified immunity defense would have been an appropriate basis for the district court's decision." *Rheaume v. Texas Department of Public Safety*, 666 F.2d 925, 931 (5th Cir. 1982).

Accordingly, the judgments dismissing the plaintiff's claims against Officers Garza and Olvera are

AFFIRMED.