Carol DEHORTY, Plaintiff,

v.

NEW CASTLE COUNTY COUNCIL, et al., Defendants.

Civ. A. No. 80–538.

United States District Court, D. Delaware.

April 14, 1983.

*lie,* 50 A.D.2d 4, 375 N.Y.S.2d 706, 710 (4th Dep't 1975).

James Geddes, Ashby, McKelvie & Geddes, Wilmington, Del., for plaintiff.

Howard M. Berg, Howard M. Berg & Associates, Sandra Kauffman, New Castle County Law Dept., Richard W. Pell, Tybout, Redfearn, Casarino & Pell, and Stephen B. Potter, Potter & Carmine, P.A., Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiff, Carol Dehorty, has brought suit under 42 U.S.C. §§ 1983, 1985 and 1986 against the New Castle County Council (the "NCCC") and council members Joseph F. Farley, Francis J. Schneider, Jr., Elizabeth L. Swift and Joseph F. Toner, in their official and individual capacities, for violations of rights secured to her under the First and Fourteenth Amendments of the United States Constitution. Plaintiff alleges that in January, 1979 the defendants impermissibly discharged her from the position of clerk of the NCCC, then allegedly controlled by the Democratic party, on the basis of her affiliation with the Republican party. Plaintiff seeks declaratory relief and reinstatement with back pay and punitive damages. Jurisdiction is present pursuant to 28 U.S.C. §§ 1331 and 1343(3).

Presently before the Court is the motion of the individually named defendants [1] for partial summary judgment. Defendants assert that under the doctrine of qualified immunity [2] they cannot be held liable, in their individual capacities,[3] for the alleged violations of the plaintiff's constitutional rights. For the reasons set forth below, the defendants' motion for partial summary judgment will be denied.

The factual record underlying defendants' motion is, at best, incomplete. Neither plaintiff nor defendants have submitted an affidavit regarding this motion nor have they made sufficient references in their memoranda to the case record.[4] The incompleteness of the record stems from the parties' dispute as to who bears the burden of proof when a defendant asserts a qualified immunity defense in a section 1983 action.

---

1. Hereinafter the individually named defendants will be referred to collectively as "defendants."

2. Defendants timely asserted the defense in answer to the plaintiff's amended complaint. (Doc. 74).

3. Defendants have conceded that the qualified immunity defense does not extend to government officials sued in their official capacities. (Doc. 78 at 1). The holding of *Owen v. City of Independence,* 445 U.S. 622, 657, 100 S.Ct. 1398, 1418, 63 L.Ed.2d 673 (1980), that a qualified immunity defense is not available to a governmental entity in a section 1983 suit also applies to individuals sued in their official capacity. *Kincaid v. Rusk,* 670 F.2d 737, 745 (7th Cir.1982); *Key v. Rutherford,* 645 F.2d 880, 883 (10th Cir.1981); *but see Powell v. Ward,* 643 F.2d 924, 934 n. 13 (2d Cir.) (applying qualified immunity defense to government official sued in official capacity), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). An official capacity suit represents another form of claim against a governmental entity itself and does not subject a government official to personal liability.

4. The parties have made reference to the record with respect to defendants' claim (Doc. 71) that the plaintiff's attorney conceded at oral argument on September 28, 1982, while addressing a related but distinct question of attorney-client privilege (Doc. 66), that the plaintiff would not be able to prove that the defendants knew or should have known that the discharge of the plaintiff violated her clearly established constitutional rights. A review of the record of that hearing indicates that the plaintiff's attorney in responding to a question by the Court concerning the effect of a case with which the attorney was not familiar expressed doubt as to whether he could show that the defendants knew or should have known that the dismissal of the plaintiff would violate her clearly established rights. The attorney stated that:

> ... I don't think we can establish to the Court's satisfaction that the defendant should have objectively known that dismissal of this particular person could have violated her constitutional rights. (Doc. 66 at 13).

An attorney's tentative response, in a hearing on a different issue, to a question on an unfamiliar case, hardly constitutes a concession. Moreover, as will be discussed *infra* at 891–892, the defendants, and not the plaintiff, bear the burden of proof on the qualified immunity defense.

Defendants argue that the plaintiff bears the burden of proof on the defense of qualified immunity. Relying upon *Saldana v. Garza,* 684 F.2d 1159, 1163 & n. 14 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983), they argue that once defendants establish that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred, the burden of proof shifts to the plaintiff to rebut the defense. The plaintiff, it is argued, must show that the defendant's allegedly wrongful conduct violated clearly established law. Since the plaintiff has not offered any evidence other than her allegations in the complaint, the defendants argue that the plaintiff failed to rebut the defendants' qualified immunity defense, thus entitling the defendants to partial summary judgment on all claims against them in their individual capacities.[5]

■ "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982) (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980)). In *Gomez,* the Court left open the question of which party bears the burden of proof on the issue of qualified immunity. *Harlow v. Fitzgerald,* 102 S.Ct. at 2737 n. 24; *Gomez v. Toledo,* 446 U.S. at 642, 100 S.Ct. at 1924 (Rehnquist, J., concurring). The Fifth Circuit Court of Appeals has held that the plaintiff has the burden of proving that a defendant's allegedly wrongful conduct violated clearly established law. *Saldana v. Garza,* 684 F.2d at 1163. *But see Barrett v. Thomas,* 649 F.2d 1193, 1201 (5th Cir.1981) (stat-

ing that qualified immunity is an affirmative defense, for which the burden of pleading and proving rests with the defendant), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982). Other circuits have held that the defendant bears the burden.[6] *See Saldana v. Garza,* 684 F.2d at 1163 n. 14. The Third Circuit Court of Appeals has "held that qualified immunity is a defense on which the defendants have the burden of proof." *Reese v. Nelson,* 598 F.2d 822, 825 n. 6 (3d Cir.1979), *cert. denied,* 444 U.S. 970, 100 S.Ct. 463, 62 L.Ed.2d 384 (1980); *Skehan v. Board of Trustees,* 538 F.2d 53, 59–62 (3d Cir.) (en banc), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). The defendants, therefore, bear the burden of establishing by a preponderance of the evidence the qualified immunity defense set forth in *Harlow v. Fitzgerald,* 102 S.Ct. at 2738.

In *Harlow,* the Supreme Court stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* 102 S.Ct. at 2738.[7] The Court more fully described the defense in *Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978):

Under the first part of the *Wood v. Strickland* [420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214] rule, the immunity defense would be unavailing to ... [defendants] if the constitutional right allegedly infringed by them was clearly established at the time of their alleged conduct, if they knew or should have known of that

---

5. Defendants presented this burden of proof argument at oral argument. Understandably, plaintiff did not address the issue in her brief. At oral argument the plaintiff argued that the burden of asserting and proving the defense lies with the defendants at all times.

6. *See, e.g., Haislah v. Walton,* 676 F.2d 208, 214–215 (6th Cir.1982) (defendants bear burden of showing that they have acted in good faith); *Harris v. Roseburg,* 664 F.2d 1121, 1127 (9th Cir.1981) (burden on defendant); *Logan v. Shealy,* 660 F.2d 1007, 1014 (4th Cir.1981) (burden on defendant), *cert. denied,* 455 U.S. 942,

102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *DeVasto v. Faherty,* 658 F.2d 859, 865 (1st Cir.1981) (burden on defendant).

7. While *Harlow* did not involve a section 1983 claim against state officials, the Court stated that it would be "untenable to draw distinctions for purposes of immunity law between suits brought against state officials under section 1983 and suits brought directly under the Constitution against federal officials." *Harlow,* 102 S.Ct. 2738 n. 30 (citing *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978)).

right, and if they knew or should have known that their conduct violated the constitutional norm.[8]

"Although as a general proposition the question of the qualified immunity of a state official is a matter for factual resolution, it is clear the issue need not always be a jury question." *Reese v. Nelson,* 598 F.2d at 825; *see Procunier v. Navarette,* 434 U.S. 555, 556, 98 S.Ct. 855, 857, 55 L.Ed.2d 24 (1978) (affirming entry of summary judgment on basis of qualified immunity); *Ness v. Marshall,* 660 F.2d 517, 519–22 (3d Cir. 1981); *Princeton Community Phone Book, Inc. v. Bate,* 582 F.2d 706, 715 (3d Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 454, 58 L.Ed.2d 424 (1978).

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time the action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he be fairly said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed.

*Harlow v. Fitzgerald,* 102 S.Ct. at 2739.

As of January, 1979, when the plaintiff was dismissed by the Council, the law on patronage firings was clearly established by the Third Circuit Court of Appeals in *Rosenthal v. Rizzo,* 555 F.2d 390, 392 (3d Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977). Relying on the Supreme Court's plurality opinions in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Third Circuit held that:

In general, a state may not condition hiring or discharge of an employee in a way which infringes his right of political association. E.g., *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *Elrod v. Burns,* 427 U.S. 347, [96] 6 S.Ct. 2673, 49 L.Ed.2d 547 (1976). An exception to this First Amendment protection exists in the case of state employees who formulate policy. This exception is designed to insure 'that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumedly sanctioned by the electorate.' *Elrod, supra,* at 367, 96 S.Ct. 2687.

With respect to confidential employees referred to by Justice Stewart in his concurrence in *Elrod,* 427 U.S. at 375, 96 S.Ct. at 2690,[9] the Court stated that:

> In our view the additional adjective— nonconfidential—does not change the basic thrust [of] the plurality opinion, which is directed at policy *formulation* and representative government. A 'confidential government employee' in this sense would not necessarily be one ... who has covert activities as part of his duties, but instead one who is privy to the discussions and information involved in the policymaking process.

*Rosenthal v. Rizzo,* 555 F.2d at 393 n. 5. *See also, id.* at 397 (Aldisert, J., dissenting). In sum, in *Rizzo* the Third Circuit Court of Appeals clearly established the constitutional right of a non-policymaking, non-confidential government employee not to be discharged in a way which infringes his right of political affiliation. Subsequent decisions of the Court of Appeals support this

8. In *Harlow,* 102 Sup.Ct. at 2738–39, the Supreme Court modified the qualified immunity defense set forth in *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975), and its progeny by eliminating the second prong of the defense which authorized liability where an official acted with malicious intention to deprive a plaintiff of a constitutional right or to cause him other injury.

9. In concurring on the judgment in *Elrod* Justice Stewart stated:

> The single substantive question involved in this case is whether a nonpolicymaking, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole grounds of his political beliefs. I agree with the plurality that he cannot.

*Elrod,* 427 U.S. at 375, 96 S.Ct. at 2690.

conclusion. In *Loughney v. Hickey,* 635 F.2d 1063, 1064 (3d Cir.1980), the Court summarized the holding in *Rizzo* by stating that "in *Rosenthal v. Rizzo,* 555 F.2d 390 [393 n. 5] (3d Cir.1977), we construed *Elrod* to require consideration of both parts of Justice Stewart's test" prohibiting patronage dismissals of non-policymaking, non-confidential government employees. *See Ness v. Marshall,* 660 F.2d at 521; *Marino v. Bowers,* 657 F.2d 1363, 1365 (3d Cir.1981) (en banc);[10] *Mazus v. Department of Transportation, Commonwealth of Pennsylvania,* 629 F.2d 870, 873 (3d Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981);[11] *see also, Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981) (holding law on patronage dismissals settled after decision in *Elrod* in 1976), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).

▇ Having established that as of January, 1979 the right of governmental employees not to be discharged solely due to political affiliation was clearly established,[12] the conclusion must also be reached that defendants should have known of this established right. "If the law was clearly established ... a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald,* 102 S.Ct. at 2739. The defendants have offered no extraordinary circumstances to show that they should not have known of the relevant and established legal standard. *See id.*

▇ The conclusion that the law on patronage dismissals was clearly established and that the defendant should have known of that law at that time does not end the matter. In the absence of a factual record the Court is unable to determine whether the defendants knew[13] or should have

---

**10.** In *Marino,* the Court of Appeals summarized the holding in *Elrod* by stating "that the patronage dismissal of a nonpolicymaking, non-confidential governmental employee violated the employee's rights to freedom of belief and association guaranteed by the First Amendment." 657 F.2d at 1365. Even though *Marino* was decided in 1981, the summary of the holding in *Elrod* supports the conclusion that the law on patronage dismissals was clearly established as of 1976, three years before the plaintiff's discharge.

**11.** In *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980), the Supreme Court, in reaffirming the plurality decision in *Elrod,* stated that:

> The ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*See Loughney v. Hickey,* 635 F.2d 1063, 1064 (3d Cir.1980); *Mazus v. Department of Transportation, Com. of Pa.,* 629 F.2d at 873 n. 1. With respect to qualified immunity, the defendants will not be charged with knowledge of *Branti* to the extent that *Branti* might extend protection to governmental employees not protected from patronage dismissals under *Elrod. See Branti v. Finkel,* 445 U.S. at 520, 100 S.Ct. at 1295 (Stewart, J., dissenting) (Justice Stewart found that *Branti* went beyond the plurality opinion in *Elrod*). Defendants cannot fairly be charged with knowledge of the law as stated in *Branti. See Harlow v. Fitzgerald,* 102 S.Ct. at 2739. However, the NCCC, as a governmental

entity that does not enjoy any immunity, will be governed by the standard set forth in *Branti.* Under the analysis set forth in *Marino v. Bowers,* 657 F.2d at 1366–70, *Branti* should be retroactively applied to the conduct of the NCCC.

If the immunity issue is still in the case at trial, the jury will be properly instructed on the differing standards under *Elrod* and *Branti* that govern the issues of the liability of NCCC and that of the immunity of the individual board members.

**12.** In *Harlow,* the Court left open the question of whether a district court looks to the law of the district, the circuit in which it sits or the Supreme Court in determining if a right is clearly established. 102 S.Ct. at 2739 n. 32. Since the NCCC is located in the Third Circuit, the defendants are properly charged with knowledge of the holdings of the Third Circuit Court of Appeals. Moreover, as the Supreme Court stated in *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977):

> When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those members who concurred in the judgments in the narrowest grounds.

Applying *Marks* to *Elrod,* Justice Stewart's statement of the case, quoted *supra* at note 9, constitutes the holding. *See Stegmaier v. Trammell,* 597 F.2d 1027, 1034 (5th Cir.1979).

**13.** Although the defendants have submitted an affidavit of Catherine Mulholland (Doc. 65) in which she states, while employed as attorney

known that their alleged conduct with respect to the plaintiff would violate the constitutional norm that a government employee cannot be discharged on the basis of political affiliation unless she was a policy making, confidential employee.[14] As the defendants note, determinations of whether an employee is in a policy making or confidential position are quite difficult. Even with a fully developed record, examination "of the *Elrod* plurality's criteria for determinations of policy-making status reveals how difficult the job of weighing evidence on that issue can be." *Rosenthal v. Rizzo,* 555 F.2d at 390 n. 5; *see Ness v. Marshall,* 660 F.2d at 522. Without a factual record such a determination is virtually impossible. Therefore, the defendants' motion for partial summary judgment will be denied.[15]

An appropriate order will issue.

for New Castle County, she did not advise the defendants with respect to the dismissal of the plaintiff, the Court cannot conclude at this time that the defendants did not actually know of the rights of governmental employees with respect to patronage dismissals.

14. On summary judgment, any doubts as to the existence of genuine issues of fact are to be resolved against the moving party and factual inferences should not be drawn in favor of the moving party. *Ness v. Marshall,* 660 F.2d at 519. On summary judgment on the question of qualified immunity, the Court, reading the facts most favorably to the plaintiff, must determine whether the defendants have proven that they neither knew nor should have known that their actions would constitute a violation of plaintiff's rights with respect to patronage dismiss-

als. At trial, the question becomes whether the defendants have shown that they neither knew nor should have known that their acts, as proven by the plaintiff, violated the plaintiff's clearly established rights.

15. The defendants will be able to assert the qualified immunity defense in subsequent proceedings in this case. The Court's opinion today only holds that constitutional rights as to patronage dismissals were clearly established as of January, 1979 and that defendants may be properly charged with knowledge of that right. The Court expresses no opinion as to whether the defendants knew or should have known that the plaintiff's dismissal, as alleged by the plaintiff for purposes of summary judgment or later as proven at trial, would violate that right.