**CELESTE R. DEARY, Plaintiff**

v.

**JOSEPH EVANS, et al., Defendants**

Civil No. 1980/289

**CELESTE R. DEARY, Plaintiff**

v.

**UNITED STATES OF AMERICA, Defendant**

Civil No. 1981/26

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 6, 1983

---

583

ALEXANDER FARRELLY, ESQ., St. Thomas, V.I., *for plaintiff*

ANDREW CAPDEVILLE, ESQ., St. Thomas, V.I., *for defendants Evans, Tuckett, Turnbull and Hodge*

ROGER CAMPBELL, ESQ., St. Thomas, V.I., *for defendant Campbell*

DARYL BARNES, ESQ., Assistant Attorney General, St. Thomas, V.I., *for Government of the Virgin Islands*

JAMES CARROLL, ESQ., Assistant U.S. Attorney, St. Thomas, V.I., *for defendants Patton and U.S.A.*

PETER A. NOWINSKI, ESQ., Special Assistant U.S. Attorney (U.S. Department of Justice), St. Thomas, V.I., *for defendants Patton and U.S.A.*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

Plaintiff has brought two actions for damages against various law enforcement officials, the Virgin Islands Government and the U.S. Government for an incident that stemmed from a bank robbery in St. Thomas in 1978. The first action, Civil No. 1980/289, is brought pursuant to 42 U.S.C. §§ 1983, 1985(2) and (3), and common law tort where the plaintiff alleges that her Fourth Amendment, Revised Organic Act, and common law rights were violated. She alleges that

she was unlawfully arrested and detained by defendant law enforcement officers when they wrongfully suspected her as the perpetrator of the robbery that had occurred three days prior to her arrest.

The second action, Civil No. 1981/261, is brought only against the U.S. Government pursuant to the Federal Tort Claims Act ("F.T.C.A."), 28 U.S.C. §§ 1346(b), 2671–2680. Plaintiff alleges in this action that the Federal Bureau of Investigation agent, defendant Raimon Patton, an agent of the U.S. Department of Justice, orchestrated the alleged events, and, therefore, the U.S. Government is liable for damages under the F.T.C.A. Plaintiff alleges the common law torts of false arrest, false imprisonment, malicious prosecution, abuse of process, and intentional emotional distress in this action and in the first action. All the defendants in both actions have denied the allegations made by the plaintiff. All have now moved for dismissal of the cases based upon either plaintiff's failure to state a claim upon which relief can be granted or upon summary judgment on the ground of qualified immunity.[1] The Court finds that, based on the circumstances of this case, the defendants' motions will be granted and the two cases dismissed.

I.

In order for this Court to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6), there must be no circumstance under which the plaintiff is entitled to any relief. Scott v. Plante, 532 F.2d 939, 945 (3d Cir. 1976). For summary judgment to be granted, there must be no issue as to any material fact and the movant is entitled to judgment as a matter of law. The Court of Appeals for the Third Circuit has established this standard:

> Summary judgment may only be granted if, taking the non-movant's allegations as true and drawing all inferences in his favor, the court is convinced from its review of the evidential sources available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law.

Scott, supra, 532 F.2d at 945.

The facts leading up to the arrest of the plaintiff are basically not in dispute. On August 1, 1978, the First National City Bank, now

---

[1] The Government of the Virgin Islands, on behalf of itself and the Department of Public Safety, has not filed a written memorandum but orally joined in all the motions at the hearing of March 11, 1983.

known as Citibank, in downtown Charlotte Amalie was robbed by a black female whose picture was taken by the bank's surveillance camera. One of those photographs was printed in the local newspaper and at least one of the alleged arresting officers had used the newspaper reprint to make a comparison with the plaintiff prior to the alleged arrest. Both the Investigation Bureau of the V.I. Department of Public Safety and the Federal Bureau of Investigation ("F.B.I.") investigated the crime. No information was ever filed by the U.S. Attorney's Office against the plaintiff in this matter and the actual robber was apprehended some months later.

Specifically, the plaintiff alleges the following facts: On the morning of August 4, 1978, sometime between 8:15 and 8:30 a.m. while jogging to work in jogging shoes, the plaintiff was followed by an unmarked police vehicle. Shortly thereafter, two men exited the car, followed by another on foot and they backed plaintiff against a wall of the C & M Caron building, a business establishment on Main Street. The officers firmly guided her into the rear seat of the car and took her to police headquarters. She was read her constitutional rights.[2] She was then delivered to defendant Bruce Campbell, a sergeant in the Investigation Bureau.

At police headquarters, plaintiff was placed in a room where she was then interrogated by defendants Hugo Hodge, Acting Chief of the Investigation Bureau of the V.I. Department of Public Safety, and his subordinate, Sergeant Bruce Campbell, under the direction of or in association with F.B.I. agent Raimon Patton. Defendants Hodge, Campbell and Patton all participated in the interrogation and "booking" of plaintiff. These processes were carried out with threats, accusations, and hostility in which they demanded that the plaintiff "own up" to having robbed the bank. The hostile interrogation, which lasted over an hour, was conducted despite the fact that plaintiff informed them of her wish not to be questioned without a lawyer.

Hours after plaintiff had been held "incommunicado", that same day, defendants Campbell and/or Hodge caused plaintiff to be taken to the District Court at around 5 p.m. where she was informed of the pending bank robbery charges. She was requested by the Court to give a handwriting sample which she did. She was released on bail subject to reporting weekly to the U.S. Marshal's Office. Failure to

---

[2] Plaintiff is not clear as to who read her her constitutional rights, but admits they were read. Plaintiff's Memorandum of Law in Opposition to [Defendant Campbell's] Motion for Summary Judgment; Deposition of Celeste Deary, dated February 18, 1983, at 96; Deposition of Celeste Deary, dated May 20, 1981, at 21–22.

report timely on plaintiff's part would have promptly precipitated her re-arrest. Two months after the arrest, the charges against plaintiff were dismissed because the defendants knew or had reason to know that someone else had robbed the bank "and because there was no basis whatever for further prosecution." [Plaintiff's] Memorandum of Law in Opposition to [Defendant Campbell's] Motion for Summary Judgment at 3.[3]

There are a number of disputes as to the facts. All or some of the parties contest that there was an arrest of the plaintiff. Defendants Joseph Evans, Edwin Turnbull, Rupert Tuckett and Hugo Hodge, however, for the purposes of their summary judgment motion only, are not contesting that the plaintiff was arrested on Main Street on August 4, 1978. Also contested is the involvement of the higher ranking law enforcement officers who questioned and "processed" plaintiff after her arrest.[4] There is also a dispute as to whether defendant Patton, as an F.B.I. agent, was working under the auspices of the V.I. Government, the U.S. Government, or both.[5] The critical question raised on the motions is whether any of the defendants are entitled to assert qualified immunity or good faith immunity defenses, and, therefore, can the case be dismissed against them as a matter of law. The Court finds that these factual disputes are not material as to this issue. The Court, therefore, adopts the facts as set out by the plaintiff, taking all the allegations as true.[6] The Court will now address the pending motions separately.

---

[3] The prosecutorial opinion that was submitted to the Court as to the reason why the U.S. Attorney's Office declined to prosecute is quoted as follows:

"Prosecution declined for lack of sufficient evidence. There is no positive identification by victim teller. The fingerprint and handwriting analyses are negative. Despite diligent efforts by Detective Hodge, the Department of Public Safety has been unable to produce a lineup because of an insufficient number of stand-ins. Accordingly, please release defendant's bond and drop all charges."

Prosecutive Opinion, dated October 4, 1978, submitted by Assistant U.S. Attorney Adriane Dudley, United States v. Celeste Deary, Crim. No. 78- ----.

[4] "Processing" refers to police booking procedures: taking biographical information from plaintiff, fingerprinting, the taking of photographs, and the taking of a writing sample by court order. All were done here.

[5] Bank robbery is an offense under both the federal laws, 18 U.S.C. § 3113, and under the Virgin Islands laws, 14 V.I.C. § 1864 (1981 Supp.). No matter under which statute plaintiff would have been prosecuted, the U.S. Attorney's Office is the appropriate body to prosecute the case. It is also the body which would elect whether to proceed under the federal charge or the local charge or both.

[6] The facts as alleged by plaintiff are supplemented by reference to an affidavit submitted by plaintiff's attorney. Defendant Campbell, however, has timely objected to the admissibility of the affidavit for consideration in this matter. Defendant

588

## II.

### A. *The Arresting Officers*

Defendants Evans, Turnbull, and Tuckett, the three officers who arrested plaintiff, argue that they have timely asserted the affirmative defense of qualified immunity in their answers, have shown there were no constitutional violations, and, therefore, the case should be dismissed against them, citing to Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 50 U.S.L.W. 4815 (June 24, 1982) and Saldana v. Garza, 684 F.2d 1159 (5th Cir. 1982). Plaintiff argues that the qualified immunity defense in Harlow applies only to high government officials who exercise discretion in the course of their employment. Police officers, it is argued, are neither high government officials nor do they exercise discretion during the course of their employment.

■■ Harlow involved a suit against two Presidential aides for an alleged conspiracy to dismiss from employment another Presidential aide. The Supreme Court held:

> that government officials performing discretionary functions generally are shielded from liability for civil damages *insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.*

Harlow, supra, 457 U.S. at —, 102 S.Ct. at 2738, 50 U.S.L.W. at 4820 (emphasis added). The Supreme Court discussed at length the two-prong test of Wood v. Strickland, 420 U.S. 308 (1975) which held that qualified immunity would be defeated under either a subjective or objective test. In other words, the defense would be defeated if the official *"'knew or reasonably should have known* that the action he took within his sphere of official responsibility would

Campbell argues that the affidavit is defective as to the requirement of Fed. R. Civ. P. 56(e) in that it is not based on personal knowledge and that plaintiff's attorney is not competent to testify to any of the matters in the affidavit. This Court, in treating defendant Campbell's request as a motion, agrees that certain paragraphs are not admissible. The Court will only strike the objectionable portions of the affidavit: hearsay, statements made on "information and belief", and facts not supportable by other evidence such as depositions and interrogatories. See Lee v. National Life-Assurance Co. of Canada, 632 F.2d 524, 529 (5th Cir. 1980), reh'g denied, 635 F.2d 516 (5th Cir. 1981). Specifically, the Court will strike paragraphs 10, 11, 12, 15, 17 (last sentence only), 18, 19, 20, 21, 24, and 26 (last sentence only).

While the other defendants have briefly argued that the affidavit is inadmissible because it is based on hearsay, and technically have made no motion to strike, this Court will award them the same treatment given to defendant Campbell.

violate the constitutional rights of the [plaintiff] *or* if he took action *with malicious intention* to cause a deprivation of constitutional rights or other injury . . . .'" Harlow, supra, 457 U.S. at —, 102 S.Ct. at 2737, 50 U.S.L.W. at 4819 quoting from Wood, supra, 420 U.S. at 321–322 (emphasis added in Harlow). In effect, the Court eliminated the subjective good faith test, to allow disposition of the issue of qualified immunity by summary judgment. As the Court further stated:

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.

Harlow, supra, 457 U.S. at —, 102 S.Ct. at 2739, 50 U.S.L.W. at 4820 (footnote omitted).

■ The Court of Appeals for the Fifth Circuit has applied Harlow to state police officers in Saldana v. Garza, 684 F.2d 1159 (5th Cir. 1982). The Court in Saldana outlined the procedures necessary to establish the defense of qualified immunity on a motion for summary judgment. The defendant must first assert the affirmative defense of qualified immunity and then show that his conduct was taken within the exercise of his discretionary authority. The burden of persuasion then shifts to the plaintiff who must rebut the good faith or qualified immunity defense by showing that the defendant's conduct violates clearly established law.

In § 1983 actions, a number of cases indicate that the good faith or qualified immunity defense may be asserted by police officers. See Pierson v. Ray, 386 U.S. 547, 557 (1967) (defense of good faith and probable cause available to police officers); Saldana, supra, 684 F.2d at 1163, n.12 (court cites to a number of Fourth, Fifth, and Ninth Circuit cases following Pierson); Ross v. Meagan, 638 F.2d 646, 649 (3d Cir. 1981) (detective entitled to qualified immunity for official actions taken in good faith). See also Scheuer v. Rhodes, 416 U.S. 232, 241 (1974) (public officials include police officers). Cf. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 456 F.2d 1339, 1346 (2d Cir. 1972) (fiction that a police officer exercises discretion maintained because protection benefit to society outweighs deterring "vigorous police action").

■ The Court is persuaded, based on Pierson and subsequent cases applying Pierson, that the defense of qualified or good faith

immunity[7] should apply to police officers in this jurisdiction and may be dispositive of a case on a motion for summary judgment. Further, this Court finds that Saldana is correct in applying Harlow to suits against state police officers.[8] See Drunkenmiller v. United States, 548 F.Supp. 193 (E.D. Pa. 1982).

■ Applying the requirements of Saldana to the present case, the Court finds the individual defendants all have pled the affirmative defense of qualified immunity. Defendants Evans, Tuckett, and Turnbull are members of the Narcotics Strike Force, a specialized division of the Department of Public Safety and the Department of Law. Although they were members of a specialized division, they remained police officers and acted as police officers toward plaintiff. See Deposition of Joseph Evans, dated March 7, 1983, at 34. See also, 5 V.I.C. §§ 3561, 3562 (1967 & Supp. 1981) (peace officers can make warrantless arrests). Clearly, the arrest function is within the discretionary authority of their employment as police officers.

This Court does not agree with the Fifth Circuit, however, which then shifts the burden of persuasion to the plaintiff to show that the government official lacked good faith. In other words, the plaintiff must now show that the defendants acted in violation of clearly established law. There is case law which supports the position that the burden of proof does not shift to the plaintiff. Saldana cites to a number of pre-Harlow cases in the First, Sixth, and Ninth Circuits which require that the defendant bear the burden of showing that he acted in good faith. Saldana, supra, 684 F.2d at 1163, n.14.

The Supreme Court in Harlow noted that this question was not decided in Gomez v. Toledo, 446 U.S. 635 (1980), a case which held only that the defendant had the burden to raise this affirmative defense. The Supreme Court unfortunately does not answer it either in Harlow. This Court has found no Third Circuit case which specifically discusses the burden of persuasion of the qualified immunity defense.[9] In Skehan v. Board of Trustees of Bloomsburg State Col-

---

[7] In Harlow, the Supreme Court uses qualified immunity as synonymous with or identical to good faith immunity. 457 U.S. at —, 102 S.Ct. at 2733, 50 U.S.L.W. at 4819.

[8] While Harlow factually involved a federal employee, the Supreme Court indicated in a footnote that this analysis would apply to state officials as well, for purposes of immunity law. Harlow, supra, 457 U.S. at —, n.30, 102 S.Ct. at 2738, 50 U.S.L.W. at 4820.

[9] There is one case, however, which indicates that this issue may be soon decided. In Forsyth v. Kleindienst, 700 F.2d 104 (3d Cir. 1983), the Court referred plaintiff's motion to dismiss his appeal from a denial of qualified immunity to the merits panel.

lege, 538 F.2d 53, 62 (3d Cir. 1976), the Third Circuit held that the burden of proof in asserting the good faith immunity defense rested on the defendant. The defendant has to convince the trier of fact by a preponderance of the evidence that the defense should attach. In a later case, but before Harlow issued, the Third Circuit held that the issue of qualified immunity could be decided on a motion for summary judgment where the defendant had skillfully prepared affidavits or depositions. Black v. Bayer, 672 F.2d 309, 316 (3d Cir. 1982). One district court in this Circuit, post-Harlow, however, has specifically stated that the defendant asserting the defense must show in his affidavit that his conduct did not violate clearly established law or the constitutional rights of which a reasonable person would have known. Chocallo v. Bureau of Hearings and Appeals, 548 F.Supp. 1349, 1366 (E.D. Pa. 1982).

■ The trend in this circuit, therefore, appears to retain the burden on the defendant since if this case went to court, the defendant would necessarily have to convince the jury of his ability to use the defense. This Court finds that a motion for summary judgment filed by the party asserting the defense should not alter the burden of persuasion. We, therefore, hold that the burden of persuasion remains with the defendant in a summary judgment motion.

This Court now must decide the issue, pursuant to Harlow, whether the behavior of the arresting officers violated clearly established constitutional or statutory rights of which a reasonable person would have known. In other words, was plaintiff's warrantless arrest in violation of her Fourth Amendment rights or her rights under § 3 of the Revised Organic Act.[10] Plaintiff argues that these rights were violated because the defendants had no probable cause for her arrest.

■ ■ The Supreme Court, in describing the circumstances where probable cause exists, has stated:

> Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

[10] Section 3 extends some of the provisions and amendments of the U.S. Constitution to the Virgin Islands. Applicable to the Virgin Islands are Amendments One through Nine and the second sentence of § 1 of the Fourteenth Amendment pertaining to due process and equal protection of the laws. 1 V.I.C. Revised Organic Act § 3 (Supp. 1981).

Brinegar v. United States, 338 U.S. 160, 175–176 (1949), quoting from Carrol v. United States, 267 U.S. 132, 162 (1925). The Third Circuit more specifically phrased the inquiry as:

> The question is whether the description of the assailants, as well as the time and geographic factors, were sufficient for a prudent man to believe that petitioner had committed the offense. Beck v. Ohio, 379 U.S. 89 . . . (1964); Brinegar v. United States, 338 U.S. 160 . . . (1949). The fact that others may have also met the same description is not in itself determinative. The inquiry must determine whether the information is adequate to narrow down the list of potential suspects so that probable cause for petitioner's arrest and not mere possibility is the criterion.

United States ex rel. Wright v. Cuyler, 563 F.2d 627, 630 (3d Cir. 1977).

In the present case, it is not disputed that the defendants had seen the bank surveillance photograph reproduced in the newspaper. The photograph as reprinted in the newspaper was not of the best quality, and the actual bank robber was wearing sunglasses which covered much of her face. There is further testimony, however, that at least defendant Evans had additionally seen the bank surveillance pictures which were of relatively good quality. Deposition of Evans, supra, at 10; Defendants' [Evans, Turnbull, Tuckett, Hodge] Answers to Plaintiff's Interrogatories, dated June 22, 1982, Interrogatory 3(a). It was after one officer showed the others the newspaper photograph, and, after all of them compared it with the plaintiff, that the officers considered pursuing plaintiff.

In addition to the photograph, two other factors were available to the defendants at the time of the arrest. At about the same time the defendants saw the plaintiff coming out of the post office and upon her looking in their direction, she started to jog or run. A police officer could reasonably interpret her behavior as one of flight. Further, the arrest occurred only three days after the robbery in the close vicinity of the robbery.[11]

Plaintiff, in her response to defendant Patton's Motion to Dismiss, further argues that the descriptions given by the bank tellers varied greatly from the physical description of the plaintiff. Plaintiff states that the only consistent description is that both were black and

---

[11] No information was given to the Court as to the proximity of the bank that was robbed to the post office. The Court, however, takes judicial notice that the downtown business district in Charlotte Amalie is relatively small in area and that the two buildings are within several blocks of each other.

female. The descriptions do not vary greatly, however, in fact they are very similar.

The plaintiff, at the time of her arrest, had black hair in a short Afro hairstyle, while the robber was described as having dark hair, brown or reddish brown in color, and it was pulled back away from her face. The plaintiff is five feet five inches tall and the robber was described in the height range of five feet two inches to five feet five inches. Plaintiff's build was described as slim by the police in a data report. United States' Response to Plaintiff's Request for Production of Documents, Deary v. United States, Civ. No. 81-26, Exhibit 6. The robber's build was described as very slim, slim, and slender. Plaintiff was 20 years old at the time of her arrest. The tellers estimated the robber's age from mid 20's to 27. The robber in fact had turned 18 years of age on the date of the robbery. United States' Response to Plaintiff's Request for Production of Documents, supra, F.B.I. Arrest Advisory/Assumption of Custody Request, Exhibit 3(d).[12] While the arresting officers did not have these detailed descriptions at the time of the arrest, this information is illustrative as to the strong resemblance between the robber and the plaintiff. Even the plaintiff herself noted that there were some similarities. Deposition of Deary, dated February 18, 1983, at 122–123.

We think the factors available to the defendants at the time of the arrest, i.e. the strong likeness of plaintiff to the photographs and/or the newspaper reprint, and what appeared to be flight, was sufficient to warrant a man of reasonable caution to believe that the plaintiff had committed the robbery. It was on these reasons that the arrest was made. The defendants hence had probable cause to arrest the plaintiff. See also United States v. Hayes, 553 F.2d 824, 826 (2d Cir. 1971) (photo comparison may constitute a fortiori probable cause to arrest). We therefore hold that because there was probable cause to arrest plaintiff, there is no statutory or constitutional violation of the plaintiff's Fourth Amendment rights by the arresting officers. Further, since the arrest was valid, there can be no action for false imprisonment. See Baker v. McCollan, 443 U.S. 137, 144–145 (1979); Wilcox v. United States, 509 F.Supp. 381, 386 (D.D.C. 1981). If there is no constitutional or statutory violation, an action under §§ 1983 and 1988 cannot stand. See Baker, supra.

---

[12] Further, one legal commentator has noted that just because a suspect does not fit all the descriptions indicated, it is inappropriate to assume that no probable cause existed. W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 3.4(c) at 614 (1978).

Clearly, this is a case of mistaken identity. As the Supreme Court said in Baker, the Constitution does not guarantee that only the guilty will be arrested. Baker, supra, 443 U.S. at 145. Accordingly, the motion for summary judgment for defendants Evans, Turnbull, and Tuckett is granted and Counts II and III in Civil No. 1980-289 are dismissed against them.

B. *The Supervising Officers*

 Upon the Court finding that the arresting officers had probable cause to arrest the plaintiff, the subsequent actions by the "processing" officers, which included police officers of greater rank,[13] establishes no violation of plaintiff's constitutional rights. The defendants Campbell, Hodge, and Patton participated in various stages of the "booking" procedures and the investigating process, but all had the following additional information available to them.

When the arresting officers brought the plaintiff to defendant Campbell's office at the Investigation Bureau of the Department of Public Safety, they relayed to him what events had occurred. Campbell, at that time, was a sergeant and second in command in the Investigation Bureau to defendant Hodge, who was Acting Chief. Campbell, in his deposition, stated that he made an independent evaluation of probable cause based on the arresting officers' information and the bank surveillance pictures. Deposition of Bruce Campbell, February 19, 1983, at 38. Defendant Campbell was also one of the officers who responded to the bank on the date of the robbery. Statements of the tellers were taken, but defendant Campbell states that he did not take them. Id. at 16–17, 64. Defendant Patton also interviewed the bank tellers on August 1, 1978 and obtained the descriptions discussed supra. Further, these defendants conferred with each other after making initial visual comparisons and both thought the surveillance pictures looked like the plaintiff. Id. at 41, 44.

Defendant Hodge in his deposition stated that on the morning of plaintiff's arrest, he called plaintiff's place of employment and found that she had come in late for work on the date of the robbery, which was subsequent to the time that the robbery had occurred. Deposition of Hugo Hodge, dated March 7, 1983, at 7. This information increased his belief that plaintiff was a legitimate suspect. He went later that day to plaintiff's place of employment and took a

---

[13] The Court recognizes that the officers involved belong to three different law enforcement branches. For the purposes of these motions, the Court accepts the plaintiff's characterization of these particular defendants as supervising officers.

copy of the bank surveillance picture. No one could identify the person. He then asked if it resembled plaintiff and the response was generally no.[14] Defendant Hodge commented that this failure to recognize the person in the bank surveillance photograph raised doubts in his mind that she may have committed the crime. Id. at 62.

Several days later after plaintiff's arrest, defendants Campbell and Hodge put together a photograph spread and showed it to the bank tellers. Plaintiff's picture was among the pictures, but no one picked out the plaintiff or any of the persons photographed. One teller, however, did point to the plaintiff's picture when defendant Campbell told her to draw eye glasses on the picture. Deposition of Campbell, supra, at 56.

 While there may have been some doubts as to whether the police had the right person,[15] this does not mean that there was no probable cause or that it was unreasonable for these defendants to conclude that there was probable cause to arrest the plaintiff. The test for probable cause is not that the person is the one who actually committed the crime but whether based on the trustworthy information available to the officers at the time of the arrest, it was reasonable for them to believe that the suspect committed the crime. Under these circumstances, the Court concludes that the information available to defendants Campbell, Hodge, and Patton was trustworthy and that there was probable cause also for these defendants to effect an arrest. More specifically for these defendants, there was sufficient probable cause for them to maintain plaintiff under arrest.[16]

Plaintiff, in her deposition of February 18, 1983, described what happened while in police custody. She stated that she was held "incommunicado" for hours and questioned for over an hour when

[14] One person, however, indicated a similarity in physique that is not pertinent to any kind of identification.

[15] Defendant Patton in his deposition stated that he was only 90% sure that the plaintiff was the correct person. Deposition of Patton, cited in Defendant Campbell's Reply Brief at 9.

[16] The plaintiff notes that the Chief Judge of this district denied a search warrant request made by defendant Patton. Plaintiff therefore argues that there was no probable cause for the arrest as well. This Court does not feel bound by this determination in that it is unknown as to what facts were available to Chief Judge Christian when that determination was made. See Wilcox v. United States, 509 F.Supp. 381 (D.D.C. 1981) (court found probable cause even though earlier action by local state judge in effect held no probable cause to arrest plaintiff). See generally, W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 3.1(b) (1978 & Supp. 1983).

she had indicated that she did not want to talk. She stated that she was harassed, that defendants Campbell, Hodge, and Patton were overbearing, that defendant Campbell slammed his body against the desk, and that they yelled at her and accused her of committing the robbery. When asked to clarify these allegations, plaintiff explained that she was taken into a well lit office where there was a number of people coming in and out. The door was kept open at all times and she was permitted to sit during the questioning. She stated that no one physically abused her. They did not hit her or swear at her and there were no guns. She was offered something to eat and drink, and also given an opportunity to make a phone call. The harassment was described as hostile remarks about the penalty for bank robbery, the accusations of her lying, and the processing of her when she thought that the officers knew that she was the wrong person.

The processing and investigating officers did what any investigating officer does when investigating a case: read an arrestee her rights; ask questions if the suspect shows a willingness to talk; "book" her; take pedigree information; and initiate the judicial process. She was read her rights and there was nothing remarkable about the booking procedures. While the Court does not condone the delay in bringing plaintiff into court, in this case, in conjunction with a valid arrest, these actions do not amount to a constitutional violation.[17] An action for civil rights violation as to these defendants cannot stand. Therefore their motions for summary judgment are granted and Counts II and III in Civil No. 1980-289 are dismissed against them.

## C. *The United States and the Federal Tort Claims Act*

The defendant United States in Civil No. 1981-26 has moved to dismiss this action alleging that the plaintiff has failed to state a

---

[17] Plaintiff also argues that the acts of the supervising and investigating officers were ministerial and not discretionary. Therefore the qualified immunity defense should not be available to them. The Court first assumes, for purposes of argument only, that these defendants could have released plaintiff, despite the fact that at least three different law enforcement divisions were involved. The Court is of the opinion that the case for the qualified immunity defense is even stronger for the supervising officers. While some of their functions are purely routine and ministerial, as supervisors they exercise more discretion than the arresting officers. The supervising officers in this instance evaluated the arresting officers' work and decided independently whether to proceed further. This evaluation was based on further investigation, which may have been conducted in accordance with police procedure. These decisions, undoubtedly, are decisions within their discretionary scope of their employment. The same policy reasons which apply to the arresting officers should apply to their supervisors in this instance.

claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Specifically, the defendant argues that the facts alleged do not constitute torts of intentional emotional distress, malicious prosecution, and abuse of process and therefore it is not liable under F.T.C.A., 28 U.S.C. §§ 1346(b), 2671–2680.[18] Plaintiff, in her response, has failed to respond to the argument regarding these torts. While the plaintiff may have effectively waived these claims, they will be addressed by the Court.

 Where there is no statutory law governing a particular matter in the Virgin Islands, this jurisdiction is governed by the Restatements of the Laws. 1 V.I.C. § 4. Emotional distress under the Restatement (Second) of Torts is defined as:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) Torts § 46(1)(1965). The conduct must be extreme and outrageous. It is not enough that the defendant acted with tortious intent or even if he acted with malice. Id., comment d. This tort is alleged to have resulted from the alleged false arrest and false imprisonment by the individual defendants. This Court has found, however, that the arrest was valid and therefore cannot be outrageous. Further, the plaintiff has indicated by deposition her actions and the actions of the defendant's agent, F.B.I. Agent Patton. The Plaintiff suffered no bodily harm and Agent Patton acted within the lawful scope of his employment. The Court finds that these facts do not establish an action for emotional distress.

 Abuse of process is defined under the Restatement as:

> One who uses the legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed.

Restatement (Second) Torts § 682. Under the Restatement, it is immaterial that the process, when initiated, was proper and that there was probable cause to bring the case. Subsequent misuse of

---

[18] The Court notes in passing that the tort of intentional emotional distress is not listed as one of the torts excluded from sovereign immunity under 28 U.S.C. § 2680(h) and ordinarily this Court would have no jurisdiction to hear this claim. The Court finds, however, that this claim "arises out of" the claims for false arrest and false imprisonment which Congress has chosen to permit suit.

process constitutes a tort as well. Id., comment a. Plaintiff has inferred in her facts that, in addition to wrongfully bringing this action, the defendants, including agent Patton, had subsequently abused judicial process in that the decision not to prosecute was made over two months after her arrest. Because there was probable cause for plaintiff's arrest, there was no abuse by the defendants deciding not to release her immediately after questioning. Plaintiff, in accordance with the normal criminal processing procedures, was released the same day of her arrest after a bail hearing was held. The notice by the Assistant U.S. Attorney, which notified the Court of the decision not to prosecute, indicates that a number of tests had been conducted in the process of investigating the crime. Clearly these actions were solely in furtherance of investigating the robbery. The Court finds that, assuming the facts as stated by plaintiff, there was no abuse of process.

Finally, for the tort of malicious prosecution, there must be two elements: there is no probable cause and the case is brought for purposes other than bringing the plaintiff to justice, the proceedings terminating in the accused's favor. Restatement (Second) Torts § 653. The first element does not exist here and therefore no claim for malicious prosecution has been made out by the plaintiff. See Yeamans v. Snook, 15 V.I. 124 (D.V.I. 1979).

The defendant also argues that, on the theory of respondeat superior, it should be able to assert the qualified immunity defense of its agent, Agent Patton, to plaintiff's constitutional and common law claims. See Norton v. United States, 581 F.2d 390 (4th Cir. 1978). Plaintiff counters by analogizing to the inability of municipalities to assert the defense of its agents in § 1983 actions citing to Owen v. City of Independence, 445 U.S. 622 (1980). This Court does not have to reach this issue for two reasons. First, the constitutional claims have been conceded by the plaintiff because counsel has stated that "[t]he deprivations claimed are common law torts." Plaintiff's Response to Defendant United States Motion to Dismiss, Civil No. 1980/289 (sic) at 7.[19] Second, the plaintiff has not made out a claim for common law false arrest or false imprisonment.

---

[19] Regarding the issue as to whether constitutional claims can be brought under an F.T.C.A. action, both parties have interpreted Carlson v. Green, 446 U.S. 14 (1980) which compares a Bivens action with an action under the F.T.C.A. On the one hand, plaintiff cites to language of a Senate Report which is quoted in Carlson which provides that an F.T.C.A. action and a Bivens action are parallel and coterminous. A plaintiff could bring an action under the F.T.C.A. for the same type of conduct which had allegedly occurred in Bivens. 446 U.S. at 20. Bivens,

A warrantless arrest under Virgin Islands law can be properly effected by any peace officer, which includes a policeman, who has "reasonable cause" to believe that a person has committed a felony. 5 V.I.C. § 3562(3).[20] Further, the Third Circuit has inferred that the proof for "reasonable cause" is less stringent than the proof for probable cause. Government of the V.I. v. Hernandez, 11 V.I. 497, 508 F.2d 712 (3d Cir. 1975). Since this Court has found probable cause, it follows that "reasonable cause" has been established as well. Moreover, this Court has held that there can be no action for false imprisonment if the arrest was lawful. Yeamans v. Snook, 15 V.I. 129, 136 (D.V.I. 1979). Since liability arises against the defendant United States only if such conduct of its employee or agent violates state law, and none has been violated, the defendant cannot be held liable. 28 U.S.C. §§ 2680, 1346(b); Carlson v. Green, 446 U.S. 14, 23 (1980); Drunkenmiller v. United States, 548 F.Supp. 193, 195 (E.D. Pa. 1982). See also Wilcox v. United States, 509 F.Supp. 381, 386 (D.D.C. 1981) (the government cannot be held liable when its agents committed no wrong). The defendant's motion is granted and the case is dismissed against the United States.

D. *The Virgin Islands Government*

The plaintiff, in Count I of Civil No. 1980-289, alleges common law tort violations against the Government of the Virgin Islands by its employees and/or agents. The Virgin Islands Government did not submit a written brief or provide oral argument, except to the extent of joining in the motions of its fellow defendants. Plaintiff, similarly, did not present any argument with respect

---

however, involved recovery against federal officials for fourth amendment constitutional violations made "under color of" federal law. See Wilcox v. United States, 509 F.Supp. 381 (D.D.C. 1981) (discusses both constitutional and common law tort under the F.T.C.A.).

On the other hand, there is language in Carlson which states that "an action under [F.T.C.A.] exists only if the state in which the alleged misconduct occurred would permit a cause of action for that conduct to go forward." 446 U.S. at 23, citing to 28 U.S.C. § 1346(b). See Birnhaum v. United States, 588 F.2d 319 (2d Cir. 1978) (pre-Carlson case but holds that the F.T.C.A. does not cover constitutional torts). Assuming arguendo, that the F.T.C.A. does encompass constitutional torts, this argument has no merit here because there were no constitutional violations.

[20] Section 3562(3) provides:

"A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person when a felony has in fact been committed and he has reasonable cause for believing the person to have committed it."

5 V.I.C. § 3562(3) (1967).

to the liability of the Government except to the extent in her response to defendant United States' motion to dismiss, that a municipality, by analogy, cannot assert the good faith defense of its agents or employees. Owen v. City of Independence, 445 U.S. 622 (1980). The Court finds that the previous discussion on the same common law claims asserted against the defendant United States is applicable here. Accordingly, Count I is dismissed. Count II is also dismissed against the Government of the Virgin Islands since it cannot be held liable when its agents violate no law.

## III. CONCLUSION

This Court greatly sympathizes with the possible embarrassment, humiliation, and the subsequent loss of her job suffered by the plaintiff in this case. In the Virgin Islands where a small event such as an arrest means instant notoriety, a person is subject to close scrutiny and comment by the public. Had this matter occurred in a large city, plaintiff's arrest may have appeared in a small section of a newspaper and, in all likelihood, this same event would go unnoticed by the general public.

This unfortunate result, however, is outweighed by the public need to insure that its laws are not broken, and, when they are broken, to insure that the offender is brought before the public to answer for the offense alleged. This is the role of our law enforcement officers: to protect the community and enforce the laws that have been passed by the legislatures. Their role is not restricted to being perfect in the execution of their duties, although their conduct is regulated by constitutional, statutory, and administrative restraints.

This particular case is clearly one of mistaken identity. The strong resemblance and the circumstances surrounding her arrest indicate that this was not a random arrest or a malicious act. The Court has found that these factors constituted probable cause for the arrest. The subsequent actions by the supervising and/or investigating officers as described by the plaintiff show that those officers were only doing their job. To a then 20-year-old woman who appears to have been exposed to criminal proceedings only on television, what goes on in the real world may have been quite a surprise. To punish these officers with civil liability in this instance would certainly unduly hamper these officers in making future arrests where on-the-spot decision making may be critical. As the Supreme Court has stated:

Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved . . . . A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."

Pierson v. Ray, 386 U.S. 547, 555 (1967). This quotation is most appropriate in this case.