# VINCENT THOMAS, Plaintiff

## v.

## GOVERNMENT OF THE VIRGIN ISLANDS and POLICE OFFICER ANGEL PARRILLA, Defendants

Civil No. 798/1988

Territorial Court of the Virgin Islands

Div. of St. Croix

September 11, 1989

Eszart A. Wynter, Esq., St. Croix, V.I., *for plaintiff*

Regina M. Coyne, Esq., Assistant Attorney General (Department of Justice) St. Croix, V.I., *for defendants*

ELTMAN, *Judge*

## MEMORANDUM OPINION

The plaintiff was arrested and detained for alleged conduct which, even if it actually occurred, was not illegal. As a result, the defendants are liable to the plaintiff for false imprisonment.

## FACTS

On June 14, 1988, Vincent Thomas, seventy-one, was in Belardo's Restaurant, in Frederiksted, speaking with Maria Diaz-Mora. Police Officer Angel Parrilla observed the two individuals engaged in a cash transaction involving lottery tickets. According to Thomas, he was there to pay Diaz-Mora $13.00 which he owed her for previously purchased Virgin Islands lottery tickets. Officer Parrilla, however, believed that he saw Puerto Rico lottery tickets on the table in front of Diaz-Mora. The police officer walked over, identified himself and arrested Thomas and Diaz-Mora for gambling and conducting an illegal lottery. He put handcuffs on them both and took them to the Frederiksted police station, where they were held until they were taken to the Territorial Court to be advised of their rights. There, they waited in a cell for forty-five minutes.

At the advice of rights hearing, Judge Cabret determined that there was no probable cause for arresting Thomas. However, the judge did find probable cause against Diaz-Mora on the charge of selling Puerto Rico lottery tickets, in violation of 14 V.I.C. § 1223. The plaintiff was released after the advice of rights hearing, approximately two and a half hours after having been taken into custody.

Officer Parrilla's testimony at the advice of rights hearing for Thomas was confusing and inconsistent:

> OFFICER PARRILLA: I observed Mr. Thomas selling tickets he had in his possession, and in his hands he had cash as well as Santo Domingo numbers and he was making transactions, cash wise from one hand to the next ...
>
> I saw him checking off numbers and I saw him giving Ms. Mora cash ...
>
> I stood there and continued to observe what was going on, when I saw Ms. Mora doing the same thing .... Then I went over and I stood there in front of them. They realized I was standing

256

there. I took my badge out and placed it on the table and said, "I am a police officer you are under arrest."

THE COURT: For what?

OFFICER PARRILLA: For gambling and conducting illegal lottery.

THE COURT: What did you do after that?

OFFICER PARRILLA: After that I took whatever cash and numbers [THE COURT:]—See what I don't understand officer, is what made you suspicious? I really don't comprehend that, so you tell me. I am trying to understand why did you arrest the individual, do you see sir? Did you see them checking off numbers, exchanging cash, did you see anything other than that?

OFFICER PARRILLA: No your honor. Everything was flat on the table.

THE COURT: Tell me what you saw?

OFFICER PARRILLA: I saw the exchange of cash and a form of checking off (sic) on a piece of paper which was on top of the table.

THE COURT: Did you see any tickets?

OFFICER PARRILLA: Yes your honor, I did. I saw Puerto Rican tickets.

THE COURT: Where were the tickets?

OFFICER PARRILLA: The tickets were right in front of Ms. Mora. I didn't see it from a distance where I was. I only got to see them when I got to the table.

Parrilla spoke again at the advice of rights hearing for Diaz-Mora, which followed immediately:

THE COURT: You have likewise charged her also with conducting a lottery, and with selling lottery tickets. Did you see any lottery tickets?

OFFICER PARRILLA: Yes your honor.

THE COURT: Were they on the table in front of her?

OFFICER PARRILLA: Yes.

THE COURT: You stated here the lottery tickets were on the table, where were the lottery tickets, what kind of tickets?

257

OFFICER PARRILLA: They were Virgin Islands lottery and Puerto Rican lottery.

THE COURT: There were Virgin Islands lottery and Puerto Rican lottery?

OFFICER PARRILLA: Yes your honor. They had both Virgin Islands and Puerto Rican lottery tickets.

In his arrest reports Parrilla noted, with respect to Thomas:

The undersigned observed "S" making transaction of illegal numbers & exchange of currency. "S" was placed under arrest.

As to Diaz-Mora, the officer wrote:

The undersigned observed "S" selling illegal numbers & lottery tickets and cash transactions.

Any uncertainty about who Parrilla thought was selling what to whom was resolved at the trial of this action, when the officer testified that he saw Thomas take a Puerto Rico lottery ticket from Diaz-Mora in exchange for cash. He arrested Thomas because he thought that he was buying Puerto Rico lottery tickets and that it was illegal to do so.[1]

Thomas seeks compensatory and punitive damages for false imprisonment and assault and battery. The defendants contend that the police officer's good faith, though mistaken, belief that Thomas' conduct was illegal justified the arrest and now protects them from liability.

## DISCUSSION

I. *False Imprisonment*

The sole question in a false imprisonment case is whether the police officer acted with color of legal authority.[2] Brewer v. Blackwell, 692 F.2d 387 (5th Cir. 1982). The validity of a warrantless arrest depends on whether, at the time of the arrest, the facts and circumstances of which the officer had knowledge were sufficient to justify a prudent person that the subject was committing or had committed an offense. United States v. Figueroa, 818

---

[1] Parrilla was uncertain at trial if he had seized any Puerto Rico lottery tickets from Thomas, and he did not make such a notation in the reports pertaining to Thomas' arrest.

[2] False arrest is a subspecies of false imprisonment. Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969), cert. denied, 396 U.S. 901, 90 S. Ct. 210 (1969).

F.2d 1020, 1023 (1st Cir. 1987). A warrantless arrest is presumptively unlawful and the burden shifts to the defendant officer to show that the arrest was justified by "reasonable cause." Wilcox v. United States, 509 F. Supp. 381 (D.D.C. 1981); Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34 (2d Cir. 1985), cert. denied, 475 U.S. 1027, 106 S. Ct. 1227 (1986). The standard for showing reasonable cause is less stringent than that for probable cause. Government of the Virgin Islands v. Hernandez, 508 F.2d 712 (3d Cir. 1975), cert. denied, 422 U.S. 1043, 95 S. Ct. 2659 (1975); Deary v. Evans, 570 F. Supp. 189 (D.V.I. 1983), reversed on other grounds sub nom. Deary v. Three Un-Named Police Officers, 746 F.2d 185 (3d Cir. 1984); Brubaker v. King, 505 F.2d 534 (7th Cir. 1974). A peace officer who arrests upon probable cause is not liable for false arrest simply because the suspect's innocence is subsequently proved. Pierson v. Ray, 386 U.S. 547, 555, 87 S. Ct. 1213, 1218 (1967).

■ Pursuant to 5 V.I.C. § 3562(1), a peace officer may arrest a person without warrant, inter alia, "for a public offense committed or attempted in his presence." See also Restatement (Second) of Torts § 121. Although the arresting officer must make the fundamentally factual decision whether probable cause exists for a warrantless arrest, the court must determine whether "the objective facts available to the officer at the time of the arrest were sufficient to justify a reasonable belief that an offense was being committed." United States v. Glasser, 750 F.2d 1197 (3d Cir. 1984), cert. denied sub nom., Erdlen v. United States, 471 U.S. 1018, 105 S. Ct. 2025 (1985). It need hardly be added that the alleged conduct precipitating the arrest must constitute an offense, i.e., it must actually be illegal.

■ Even assuming that Thomas was buying Puerto Rico lottery tickets, he was not committing any crime. Tit. 14 V.I.C. § 1223 prohibits only the selling, giving or furnishing of other than official Virgin Islands lottery tickets; the statute does not proscribe the purchasing, accepting or receiving of unauthorized tickets. Likewise, Thomas did not violate § 1224, which prohibits gambling. Smith v. Williams, 698 F.2d 611 (3d Cir. 1983).

■ The defendants contend that a police officer enjoys qualified immunity from liability for false imprisonment.[3] Just as surely as

---

[3] Qualified immunity is synonymous with good faith immunity. Deary v. Evans, 570 F. Supp. 189 (D.V.I. 1983).

the doctrine exists, it manifestly does not apply in this case. In Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 2738 (1982), the Supreme Court held:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

The defense of qualified immunity thus is defeated if the official "'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff] ....'" Id. at 2737, quoting from Wood v. Strickland, 420 U.S. 308, 321–22, 95 S. Ct. 992, 1000–1001 (1975), reh'g denied, 421 U.S. 921, 95 S. Ct. 1589 (1975) (emphasis added in Harlow). While Harlow involved the actions of high government officials, the Virgin Islands District Court has applied the doctrine of qualified immunity to police officers in a federal civil rights action under 42 U.S.C. § 1983. Deary v. Three Un-Named Police Officers, supra. The authority is persuasive also in the case at bar.

Although Parrilla's arrest was without probable cause, he may still avoid liability if he acted in good faith. Id. at 192. The question of good faith is not entirely subjective, however, because it requires more than merely determining the officer's actual belief. That belief must also have been reasonable. Id., citing Black v. Stephens, 662 F.2d 181, 193 (3d Cir. 1981), cert. denied, 455 U.S. 1008, 102 S. Ct. 1646, reh'g denied, 456 U.S. 950, 102 S. Ct. 2022 (1982).

 By definition, reasonable cause cannot exist where the subject's conduct is not prohibited.

> A peace officer making an arrest without a warrant is protected in every case where he acts under a reasonable mistake as to the existence of facts which ... justify an arrest without a warrant. On the other hand, no protection is given to a peace officer who, however reasonably, acts under a mistake of law other than a mistake as to the validity of a statute or ordinance.

Restatement, supra § 121, comment i; Cambrist Films, Inc. v. Duggan, 475 F.2d 887 (3d Cir. 1973). "A police officer cannot prove his reasonable belief in the validity of an arrest by asserting his ignorance of the law pursuant to which the arrest was effected."

Hartnett v. Schmit, 501 F. Supp. 1024 (D. Ill. 1980). Restraint without color of legal authority constitutes false imprisonment. McLaughlin v. Bradlee, 599 F. Supp. 839 (D.D.C. 1984), aff'd on other grounds, 803 F.2d 1197 (D.C. Cir. 1986). Since there was no probable cause to arrest him, detaining the plaintiff prior to his advice of rights also was unlawful and as such constituted a false imprisonment. Id. at 175; Dent v. May Dept. Stores Co., 459 A.2d 1042, 1044 (D.C. 1982). Absent legal justification or probable cause for the plaintiff's arrest and detention, Parrilla's liability for false imprisonment is established.

## II. *Assault and Battery*

In effecting the arrest, Parrilla used handcuffs to restrain Thomas, who claims that, on the way to the police car which took him to the station, he complained to no avail that the handcuffs were too tight. However, Thomas and Diaz-Mora were handcuffed together, at least on the way to the station, so that it is fair to conclude that Thomas had a handcuff only on one wrist. On the trip from the police station to court, Thomas again was handcuffed, but this time not uncomfortably. Thomas later had bruises on his wrists from the handcuffs but did not seek medical treatment.

 During an unlawful arrest, an assault and battery technically is committed when the arrestee is handcuffed, or placed in a police car, or otherwise touched and restrained. Budgar v. State, 414 N.Y.S.2d 463 (N.Y. 1979); Bur v. Gilbert, 415 F. Supp. 335 (D. Wis. 1976). The test for whether the offensive physical contact constitutes actionable assault and battery is whether the officer's actions were more than an integral part of and "inextricably intertwined" with the arrest process itself. Kedra v. City of Philadelphia, 454 F. Supp. 652 (E.D. Pa. 1978); Bur v. Gilbert, supra.

The general procedure for an arrest in this territory is codified at 5 V.I.C. § 3565 (a):

> An arrest is taking a person into custody, in a case and in the manner authorized by law. An arrest is made by actual restraint of the person of the defendant or by his submission to the custody of an officer. The defendant must not be subjected to any more restraint than is necessary for his arrest and detention.

No Virgin Islands or other case law has been found interpreting the term "actual restraint," and the record does not indicate, one way or the other, whether there was a "submission to the custody of the officer," whatever that somewhat vague phrase might be understood to mean.

By virtue of his advanced years and apparently peaceful manner, and because the act for which he was arrested involved no violence or weapons, Thomas was not likely to present a risk of flight or of harm to the police officers at the scene. However, the Court notes the general, if not universal, policy followed by police in the Virgin Islands and elsewhere to place handcuffs on arrestees. There is no evidence of egregious or malicious conduct by Officer Parrilla. Handcuffing Thomas, even if it were not in compliance with a uniform procedure under such circumstances, was a good faith and a reasonable use of force.

■ The facts of this case do not warrant a post hoc judicial substitution of judgment in place of the discretion exercised by the officer at the scene. See, e.g., Samuel v. Busnuck, 423 F. Supp. 99 (D. Md. 1976); Hoston v. United States, 566 F. Supp. 1125 (D.D.C. 1983). The physical contact by Parrilla upon Thomas was a technical battery only, inseparable from the circumstances of the arrest. That the arrest was illegal does not, in and of itself, create a viable claim for assault and battery. Kedra v. City of Philadelphia, supra; Lopez v. White, 443. F. Supp. 556 (E.D. Pa. 1977). Accordingly, the claim of assault and battery will be dismissed.

III. *Damages*

■ Humiliation, embarrassment and disgrace are factors which may properly be considered in assessing actual damages for false arrest. Moolenaar, supra; Raysor, supra; Nelson v. R. H. Macy & Co., 434 S.W.2d 767 (Mo. 1968); Garvis v. K Mart Discount Store, 461 S.W.2d 317, 322 (Mo. 1970).

■ Here, a seventy-one year old man, enjoying his retirement, was seized without legal basis, handcuffed in public, placed in a police car, transported to the station house and then to court, and locked in a cell until he saw a judge and was released. He spent about two and a half hours in custody. The experience, predictably, was traumatic and humiliating to him. People in the street saw him being led, in handcuffs, to a patrol car. Sitting in a cell, he was depressed and worried and had discomfort in his neck which he

attributed to an aggravation of chronic hypertension. After his release, people commented upon his arrest. He continues to be upset and worries that he has a police record. Whatever the good faith of the arresting officer, the ordeal which an apparently decent and honorable senior citizen experienced is not one he is likely to soon forget. While the plaintiff presented little evidence of injury and had no expenses, the blot upon the escutcheon of a gentleman in his twilight years cannot be ignored. Under the circumstances, a fair award of compensatory damages to him is $5,000.00.

█ Although false imprisonment generally is considered an intentional tort, Johnson v. U.S., 547 F.2d 688 (D.C. Cir. 1976), the facts of this case do not warrant assessing punitive damages against the police officer. The arrest obviously was intentional, but it resulted from a mistake. In these circumstances, an error in judgment, based upon a misunderstanding of the law, does not warrant an award of punitive damages, which are reserved for outrageous acts, performed either with an evil or bad motive or with reckless indifference to the rights of others. Restatement (Second) of Torts § 908; Justin v. Guardian Insurance Co., Inc., 670 F. Supp. 614 (D.V.I. 1987).

IV. *The Government's Liability*

█ The record contains nothing to indicate, as alleged by the plaintiff, that the Government was negligent in hiring Officer Parrilla or in failing to properly train or supervise him, so that there is no liability on that theory. Rather, the Government's liability for the false imprisonment of the plaintiff rests on the principle of respondeat superior, that the principal is accountable for the acts of its agent, committed within the course and scope of employment. Restatement (Second) of Agency §§ 243, 245. Such common law doctrine has been codified in this jurisdiction with respect to tort actions against the Government. 33 V.I. § 3408(a); Mathurin v. Government, 12 V.I. 23 (D.V.I. 1975); Small v. Government, 20 V.I. 65 (Terr. Ct. St. T. and St. J. 1983). Accordingly, the defendants are jointly and severally liable for the false imprisonment of Vincent Thomas.

## ORDER

In accordance with the memorandum opinion of even date, it is hereby

ORDERED, ADJUDGED AND DECREED that the plaintiff, Vincent Thomas, is awarded judgment against the defendants, Government of the Virgin Islands and Angel Parrilla, jointly and severally, in the amount of $5,000.00.